# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 7, 2016

Plaintiff-Appellee,

v

No. 324868
Houghton Circuit Court
LC No. 2014-002750-FC

NIMA NASSIRI,

Defendant-Appellant.

Before: BOONSTRA, P.J., and WILDER and METER, JJ.

PER CURIAM.

Defendant appeals by right his conviction, following a jury trial, of second-degree murder, MCL 750.317. The trial court sentenced him to a prison term of 20 to 40 years. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant admitted that he became angry when he awoke just before midnight on December 8, 2013 and saw his wife, Sanaz Nezami, using her cell phone. Defendant testified that he "lost it" and attacked his wife, pushing and shoving her, forcing her cell phone into her mouth until her mouth bled, kicking her legs out from under her, and, as she lay on the ground, getting on top of her and slamming her head against both the carpeted living room floor and the linoleum kitchen floor. Sanaz called 911. At some point before medical assistance arrived, Sanaz vomited and fainted. She never regained consciousness. Photographs from Sanaz's autopsy were admitted into evidence during the testimony of Dr. John Weiss, who had performed the autopsy. Weiss testified that Sanaz died as a result of an acute subdural hematoma caused by blunt force trauma to the head.

Defendant was interviewed by police on December 9, 2013. After waiving his *Miranda* rights,[1] he gave substantially the same account of events that he testified to at trial. He additionally stated that he had a history of drug and alcohol abuse, and that he had been drinking on the night of the incident but had not been using drugs. The prosecution, when cross-

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

-1-

examining defendant, elicited testimony from defendant that he had a medical marijuana card "off and on between 2005 and 2013" and that he smoked marijuana to relieve emotional problems.

Defendant was convicted and sentenced as described above. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that his trial counsel committed numerous errors that rendered his performance constitutionally ineffective.[2] We disagree. "Whether defense counsel performed effectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Because defendant did not move the trial court for a new trial or for a *Ginther*[3] hearing, and this Court denied defendant's motion to remand for an evidentiary hearing,[4] our review is limited to any errors apparent on the record below. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000); *People v Buie (On Remand)*, 298 Mich App 50, 60-61; 825 NW2d 361 (2012).

Effective assistance of counsel is presumed, and a defendant claiming ineffective assistance of counsel bears a heavy burden of proving otherwise. *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009). In order to show ineffectiveness of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's errors, the results of the proceedings would be different. *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). Additionally, defense counsel has wide discretion regarding matters of trial strategy, *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012), and we will not substitute our judgment for that of trial counsel on matters of strategy, nor will we employ the benefit of hindsight to assess the competence of counsel, *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

Decisions regarding what evidence to present, *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008), and whether to call or question witnesses, *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003), are presumed to be matters of trial strategy, as is a decision not to raise an objection to procedures followed, *People v Unger*, 278 Mich App 210, 242, 253; 749 NW2d 272 (2008).

---

[2] Defendant also argues in the alternative that his counsel was ineffective for failing to object to what defendant alleges were incomplete jury instructions, the erroneous admission of other acts evidence, and the erroneous admission of autopsy photographs. We address those claims in their respective sections of this opinion.

[3] *People v Ginther*, 390 Mich 436, 443; 212 NW 2d 922 (1973).

[4] *People v Nassiri*, unpublished order of the Court of Appeals, entered June 1, 2015 (Docket No. 324868).

## A. EXPERT MEDICAL WITNESS

Defendant claims that defense counsel failed to consult with and call an expert witness to challenge the pathologist's testimony that a traumatic blow to the head caused the lethal subdural hematoma that resulted in Sanaz's death. He contends that because intent was the disputed issue in this case, a defense expert could have created reasonable doubt by testifying that Sanaz had a preexisting condition that caused the substantial brain bleeding or that the injury was a "freak accident" resulting from the assault. The record reveals, however, that the trial court granted defense counsel's request for funding for a defense expert. Although defense counsel did not call a defense expert to testify at trial, the record is silent with respect to defendant's assertion on appeal that counsel never consulted with an expert.

Irrespective of whether defense counsel's decision to consult with or call an expert was proper trial strategy, defendant merely speculates that a hypothetical defense expert could have provided favorable testimony. Defendant has therefore not established the factual predicate for his claim, *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999), and has failed to show that the retention and use of a defense expert would have altered the outcome of the lower court proceedings. *Payne*, 285 Mich App at 190.

## B. CHANGE OF VENUE/PRETRIAL PUBLICITY

Defendant next argues that counsel was ineffective in failing to move for a change of venue due to the "pervasive, continuing, and overwhelmingly negative publicity surrounding the prosecution of this case." Defendant's argument is premised on the voir dire that occurred during the selection of the jury. "The purpose of voir dire is to elicit enough information for development of a rational basis for excluding those who are not impartial from the jury." *People v Tyburski*, 445 Mich 606, 618; 518 NW2d 441 (1994). Jury selection is a matter of trial strategy. *Unger*, 278 Mich App at 258.

Generally, a defendant must be tried in the county where the crime is committed. MCL 600.8312; *People v Jendrzejewski*, 455 Mich 495, 499; 566 NW2d 530 (1997). However, a trial court may change venue to another county where justice so demands or a statute so provides. MCL 762.7; *Jendrzejewski*, 445 Mich at 499-500. "[I]t may be appropriate to change venue of a criminal trial when widespread media coverage and community interest have led to actual prejudice against the defendant." *Unger*, 278 Mich App at 254. However, mere exposure by jurors to media accounts of the crime does not give rise to a presumption that defendant's due process rights were violated or that he is entitled to a change of venue. *People v DeLisle*, 202 Mich App 658, 664-665; 509 NW2d 885 (1993). Instead, a defendant must show that

> there is either a pattern of strong community feeling against him and that the publicity is so extensive and inflammatory that jurors could not remain impartial when exposed to it, or that the jury was actually prejudiced or the atmosphere surrounding the trial was such as would create a probability of prejudice. [*People v Cline*, 276 Mich App 634, 639; 741 NW2d 563 (2007) (internal quotation marks and citation omitted).]

The record of the voir dire reveals that jurors were questioned about exposure to pretrial coverage of the incident. Jurors who indicated that they had read articles and would be unable to disregard what they knew about the case were removed for cause or by peremptory challenge. However, defendant argues that defense counsel failed to adequately voir dire (regarding pretrial publicity) the potential jurors who had replaced removed jurors. Defendant's assertion is not supported by the record. As new potential jurors were called, the prosecutor asked if there was anything that they felt would prevent them from giving a fair and honest evaluation of the evidence, and defense counsel questioned jurors about media coverage in general. Further, defendant concedes that the seated jurors stated that they would disregard their knowledge of the case from the media and confine their deliberations to only the trial evidence. Defendant has thus not demonstrated that the jury actually chosen could not remain impartial, or that there was any actual prejudice or probability of prejudice. *Cline*, 276 Mich App at 639. Therefore, a motion for change of venue from defense counsel would have been futile; counsel is not ineffective for failing to raise futile motions. *People v Milstead*, 250 Mich App 391, 401; 648 NW2d (2002).

Further, given the overwhelming evidence in this case, there is no basis for concluding that the result of the proceedings would have been different if the trial had been conducted in a different county. Accordingly, defendant has failed to establish ineffective assistance of counsel as a result of defense counsel's failure to move for a change of venue or counsel's questioning of potential jurors on the subject of pretrial publicity. *Payne*, 285 Mich App at 190.

## C. CONSTITUTIONAL RIGHT NOT TO TESTIFY

Next, defendant argues that defense counsel wrongly advised him that the trial court required him to testify. The alleged error is not apparent on the lower court record and defendant has not established the factual predicate for this claim. *Hoag*, 460 Mich at 6. Defendant asserts that his trial counsel told him during a recess, after defendant had told counsel that he was not ready to testify, that the trial judge would require him to testify. Even if this assertion were true, a reasonable interpretation of this statement is that trial counsel had advised defendant that if he did not wish to testify at that time, he would not be granted a recess or adjournment to testify at a later time.

Further, even if trial counsel communicated to defendant erroneously or inadvertently, that he would be required to testify, any negative impact stemming from defendant's testimony was harmless in light of defendant's police interview, which was played for the jury. Further, there was substantial evidence, including Sanaz's statement to the 911 operator, that defendant had physically assaulted Sanaz and that he had done so with the requisite intent. *Payne*, 285 Mich App at 190.

## D. MIDDLE EASTERN BIAS

Defendant, who was born and raised in southern California, is of Middle Eastern descent. The record of the jury voir dire reveals that trial counsel did not ask the prospective jurors whether any of them harbored prejudice against Middle Eastern men. Defendant argues that counsel's failure to do so evidences ineffective assistance. However, an inquiry into racial prejudice is constitutionally required only where race is a bona fide issue in the matter. *Ristaino*

*v Ross*, 424 US 589, 594; 96 S Ct 1017; 47 L Ed 2d 258 (1976); *People v LeBlanc*, 465 Mich 575, 586-587; 640 NW2d 246 (2002).

Nothing in the record suggests that race was a bona fide issue in this case. Defendant offers in support of his argument the affidavit of an attorney/jury consultant who opines that a bias toward men of Middle Eastern descent exists in America and that trial counsel should inquire into potential jurors' bias given the "overwhelmingly white" demographic of Houghton, Michigan. Defendant also offers scholarly articles concerning the presence of anti-Middle Eastern sentiment in America. However, defendant presents no specific evidence that the jurors actually selected in this case harbored bias against men of Middle Eastern descent.[5] The fact that defendant is of Middle Eastern descent by itself is not sufficient to conclude that race was a bona fide issue in this case. At issue was defendant's intent at the time that he assaulted Sanaz. Because defendant need not question potential jurors on matters not in issue, and unnecessary jury voir dire about racial matters might have had the effect of making race an issue when it was not, possibly to defendant's detriment, trial counsel's decision not to inquire about race during voir dire was a reasonable trial strategy. See *LeBlanc*, 465 Mich at 583-584.

## III. JURY INSTRUCTIONS

Defendant also argues that the trial court erred in failing to provide the jury with an instruction on voluntary manslaughter. He further asserts that defense counsel was ineffective for failing to ask for such an instruction or, relatedly, objecting to the trial court's jury instructions. "A party must object or request a given jury instruction to preserve the error for review. Absent an objection or request for an instruction, this Court will grant relief only when necessary to avoid injustice." *Sabin (On Second Remand)*, 242 Mich App at 657. We therefore review defendant's claim for plain error affecting substantial rights. *People v Gonzalez*, 468 Mich 636, 644-645; 664 NW2d 159 (2003). We review his claim of ineffective assistance of counsel as a mixed question of fact and law. *Trakhtenberg*, 493 Mich at 47.

When a defendant is charged with murder, an instruction for voluntary and involuntary manslaughter must be given if the instruction is "supported by a rational view of the evidence." *People v Mendoza*, 468 Mich 527, 541; 664 NW2d 685 (2003). In *People v Mitchell*, 301 Mich App 282, 286-287; 835 NW2d 615 (2013), this Court provided the following relevant guidance:

> To prove that a defendant committed voluntary manslaughter, " 'one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions.' " *People v Reese*, 491 Mich 127, 143; 815 NW2d 85 (2012), quoting *Mendoza*, [468 Mich 527, 535; 664 NW2d 685 (2003)]. However, provocation is not an element of voluntary manslaughter; rather, it is a circumstance that negates the presence of malice. *Mendoza*, 468 Mich at 536. In *People v Tierney*, 266 Mich App 687; 703 NW2d 204 (2005), this Court held that "[t]he degree of provocation required to mitigate a killing from murder to

---

[5] We note that the record does not reveal the race or national origin of the jurors selected.

manslaughter 'is that which causes the defendant to act out of passion rather than reason.' " *Id.* at 714-715[ ], quoting *People v Sullivan*, 231 Mich App 510, 518; 586 NW2d 578 (1998). Further, "[i]n order for the provocation to be adequate it must be that which would cause a reasonable person to lose control." *Tierney,* 266 Mich App at 715 (citation and quotation marks omitted). Whether the provocation was reasonable is a question of fact; but if "no reasonable jury could find that the provocation was adequate, the court may exclude evidence of the provocation." *Id.* (citation and quotation marks omitted).

In determining whether a voluntary manslaughter instruction is appropriate, a reviewing court may consider the theory of the case advanced by the defendant at trial. See *Mendoza*, 468 Mich at 546-548.

In this case, although defendant testified that he was "crazy"[6] and that he "lost it" because Sanaz would not "give him space," the theory of the case advanced by defendant was that the blows he inflicted to Sanaz's head were not sufficient to constitute "blunt force trauma" and that he did not intend to kill her or to inflict great bodily harm. Consistent with this defense, defense counsel requested an instruction on involuntary manslaughter. Defendant presented no evidence that he had acted in the heat of passion or that any such passion was caused by adequate provocation that would cause a reasonable person lose control, see *People v Roper*, 286 Mich App 77, 88; 777 NW2d 483 (2009); in fact, defendant testified that Sanaz "did nothing" to provoke the incident. Because no reasonable person could have found legally adequate provocation, the lack of a voluntary manslaughter instruction was not plain error, and the failure of counsel to request such a jury instruction was not ineffective assistance of counsel. See *People v Gonzalez*, 468 Mich at 644-645.

## IV. OTHER ACTS EVIDENCE

Defendant next argues that the prosecutor improperly elicited irrelevant other acts testimony regarding defendant's prior drug use in violation of MRE 404(b), and that counsel was ineffective for failing to object to the testimony. To preserve an evidentiary issue for appellate review, a party must timely object at trial and specify the same ground for objection as is asserted on appeal. *People v Toma*, 462 Mich 281, 323; 613 NW2d 694 (2000). Defendant did not object to the allegedly improper questions. We therefore review defendant's claim for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). We review his claim of ineffective assistance of counsel as a mixed question of fact and law. *Trakhtenberg*, 493 Mich at 47.

The questions asked by the prosecution concerning past drug use and defendant's medical marijuana card were not relevant to any issue at hand. MRE 401. Although the prosecution argues that the questions were relevant to demonstrate that defendant lawfully waived his *Miranda* rights when interviewed by police, it does not appear that the validity of the waiver was an issue at trial; indeed defendant testified consistently with his police interview. However,

---

[6] He testified that the term "crazy" was slang for "absurd."

assuming that the prosecution erred by questioning both defendant and the detective who interviewed defendant about whether defendant had a history of prior drug use, defendant has failed to demonstrate that any such error affected the outcome of the lower court proceedings. *Id*. at 763-764. Defendant's audiotaped interview with the police was played for the jury and revealed the same information elicited by the prosecutor. And the evidence against defendant was overwhelming. Defendant admitted that he had inflicted the injuries on Sanaz, and the medical testimony regarding the severity of Sanaz's brain injury was compelling and uncontested. The record does not support the conclusion that the evidence of defendant's prior drug use was given any undue weight in light of the other testimony, nor does the record support a finding that the admission of the evidence of prior drug use resulted in the conviction of an actually innocent person or undermined the "fairness, integrity or public reputation of judicial proceedings." *Id*.

Defendant also argues that the prosecution erred by asking defendant questions regarding whether he had ever studied "inflicting pain." However, assuming that "inflicting pain" would constitute "other acts" for purposes of MRE 404(b), defendant responded negatively to the prosecution's questions and the prosecution made no further inquiry. Thus, defendant cannot demonstrate that the questions, even if asked in error, prejudiced him. *Id*.

Because defendant cannot demonstrate any prejudice in the admission of the challenged testimony, he also cannot demonstrate a reasonable probability that but for his counsel's conduct the outcome of his trial would have been different. *Lockett*, 295 Mich App at 187.

## V. PHOTOGRAPHIC EVIDENCE

Defendant next argues that he was denied a fair trial by the admission of autopsy photographs, or in the alternative that his counsel was ineffective for failing to object. We disagree. Because defense counsel did not object to the admission of the photos, we review this claim for plain error. *Carines*, 460 Mich at 763. We review his claim of ineffective assistance of counsel as a mixed question of fact and law. *Trakhtenberg*, 493 Mich at 47.

Defendant contends that the photos were not "substantially necessary or instructive to show material facts or conditions" because the pathologist could have verbally described the photos and because the photos were not relevant to a contested issue in light of defendant's admission that he had caused Sanaz's injuries.

When a defendant pleads not guilty to a crime, "the prosecution may offer all relevant evidence, subject to MRE 403, on every element." *People v Mills*, 450 Mich 61, 70; 537 NW2d 909, mod on other grounds 450 Mich 1212 (1995). Defendant was charged with second-degree murder, which includes the element of malice. See *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998). "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id*. at 464. Indeed, the only disputed issue was defendant's intent to kill.

Photographs that illustrate the nature and extent of the victim's injuries can be used to establish intent to kill. *Mills*, 450 Mich at 71; *People v Howard*, 226 Mich App 528, 550; 575

NW2d 16 (1997).  Here, the autopsy photographs depicted a subdermal injury to Sanaz's brain, the nature and extent of which was relevant to the determination whether defendant's acts were intentional.  The photographs were relevant and, thus, admissible subject to MRE 403, which states, in pertinent part, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."  "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Ortiz*, 249 Mich App 297, 306; 642 NW2d 417 (2001) (internal quotation marks and citation omitted).  Contrary to defendant's assertion, the prosecution need not rely solely on expert testimony to establish the severity and extent of injuries.  *Mills*, 450 Mich at 76; *People v Gayheart*, 285 Mich App 202, 227; 776 NW2d 330 (2009).  When a photograph is admitted for an otherwise proper purpose, it is not inadmissible simply because of its gruesome nature or the shocking details of the crime.  *People v Ho*, 231 Mich App 178, 188; 585 NW2d 357 (1998).

In this instance, the probative value of the photographs is not substantially outweighed by unfair prejudice.  First, the photographs were not cumulative to any other physical evidence admitted at trial.  Second, the photographs were highly probative of the severity of Sanaz's brain injury and aided in explaining the complex medical testimony regarding the amount of force necessary to cause the extensive bleeding between Sanaz's skull and her brain, which caused great pressure that led to a brain herniation, as well as the significant amount of subdural bleeding, a subdural lesion, and the acute subdural hematoma that ultimately caused death.  Third, although the photos were graphic, they were not particularly inflammatory or shocking; the photos were merely autopsy photos depicting Sanaz's injuries.  In short, there is nothing about the photos that would suggest they were calculated to arouse the sympathies or prejudices of the jury against defendant.  Accordingly, any potential for unfair prejudice did not substantially outweigh the probative value of the photos, and there was no error in their admission.  Because the photos were properly admitted, defendant's counsel was not ineffective for failing to make a futile objection.  *Milstead*, 250 Mich App at 401.

## VI.  CUMULATIVE ERROR

Finally, defendant argues that the cumulative impact of defense counsel's errors deprived him of his constitutional right to a fair trial.  "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007).  However, if the defendant has not established any errors, then reversal is not warranted.  *Id.*  Defendant has not established any errors which, when taken cumulatively, would require reversal.

Affirmed.

/s/ Mark T. Boonstra
/s/ Kurtis T. Wilder
/s/ Patrick M. Meter