PEOPLE v HO

Docket No. 188274. Submitted April 7, 1998, at Detroit. Decided August 14, 1998, at 9:10 A.M.

Ming Chan Ho was convicted by a jury in the Oakland Circuit Court, Denise Langford Morris, J., of first-degree murder and possession of a firearm during the commission of a felony. The defendant appealed.

The Court of Appeals *held*:

1. The defendant's allegation that his right to a fair and impartial jury was compromised when the subject of "gang bias" arose during the voir dire must be rejected because the defendant failed to raise any objection when the subject arose and did not raise the issue until he filed a motion for a new trial. In any event, there is no merit to the claim.

2. The defendant waived any claim of error regarding the racial composition of the jury.

3. The court properly admitted evidence regarding the defendant's involvement in a robbery a few weeks before the murder.

4. The court did not err in admitting photographs of the victim at the crime scene.

5. The court properly agreed to read CJI2d 5.5 and 5.6, the disputed-accomplice instructions, with regard to the testimony of two witnesses and refused to apply the instructions to the testimony of two other witnesses.

6. The defendant failed to demonstrate that his right to confront a witness was impaired when a witness invoked the Fifth Amendment right to remain silent after direct examination by the prosecutor and during cross-examination by defense counsel. Defense counsel, as a matter of trial strategy, declined to cross-examine the witness at a later date after the witness indicated he would complete the cross-examination and the court ruled that the prosecution could recall the witness.

7. The defendant did not show that he did not receive effective assistance of counsel.

8. The defendant failed to show that the trial court's decision to impose restitution was to compensate the victim's family for the reward money offered in this case. The defendant waived any claim

of error that the court failed to consider his ability to pay restitution by failing to raise the issue at the time of sentencing.

Affirmed.

1. CRIMINAL LAW — JURY — CHALLENGE TO VENIRE.

The prosecution must provide a racially neutral explanation for peremptorily excluding racial minorities from a venire to overcome a claim of discriminatory purpose; the court must then decide if the defendant proved purposeful discrimination; the court's ruling is reviewed on appeal for an abuse of discretion.

2. CRIMINAL LAW — EVIDENCE — OTHER ACTS.

Evidence of other crimes, wrongs, or acts is admissible under MRE 404(b) if the evidence is offered for a proper purpose and not to prove the defendant's character or propensity to commit the crime, is relevant to an issue or fact of consequence at trial, and is sufficiently probative to outweigh the danger of unfair prejudice (MRE 403).

3. CRIMINAL LAW — EVIDENCE — OTHER ACTS.

A four-part test is employed to show logical relevance where similar-acts evidence is offered to show identification through modus operandi: there must be substantial evidence that the defendant committed the similar act, there must be some special quality of the act that tends to prove the defendant's identity, the evidence must be material to the defendant's guilt, and the probative value of the evidence sought to be introduced must not be substantially outweighed by the danger of unfair prejudice.

4. CRIMINAL LAW — JURY — JURY INSTRUCTIONS.

A trial court is required to give requested jury instructions only if the instructions are supported by the evidence or the facts of the case; the determination whether a requested instruction is applicable to the facts is within the trial court's discretion.

5. CONSTITUTIONAL LAW — CRIMINAL LAW — RIGHT TO CONFRONT WITNESSES.

The Confrontation Clause guarantees an opportunity for effective cross-examination and protects a defendant's right for a reasonable opportunity to test the truthfulness of a witness' testimony; it does not guarantee cross-examination that is effective in whatever way, and to whatever extent, the defense might wish (US Const, Am VI; Const 1963, art 1, § 20).

6. SENTENCES — RESTITUTION.

A trial court required to order restitution under MCL 780.766(2); MSA 28.1287(766)(2) is not required to conduct an evidentiary hearing to determine if the defendant has the ability to pay restitution and

may rely on a presentence investigation report or a separate report in making its determination; the court must make findings on the record regarding the defendant's ability to pay restitution where the defendant asserts an inability to pay restitution.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *David Gorcyca,* Prosecuting Attorney, *Richard H. Browne,* Chief, Appellate Division, and *Marilyn J. Day,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Rubiner,* for the defendant on appeal.

Before: CAVANAGH, P.J., and DOCTOROFF and SAAD, JJ.

SAAD, J. A jury convicted defendant of one count of first-degree murder, MCL 750.316; MSA 28.548 (supported by two theories: premeditated murder and felony-murder involving armed robbery), and one count of possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). He appeals as of right, and we affirm.

I

FACTS

In this heinous crime, defendant murdered teenager Angela Garcia in cold blood in October 1994, while she was working alone in a Subway restaurant in Troy.[1] There were no eyewitnesses to this killing available to testify at trial. Acting on tips, the police initiated surveillance of defendant, a high school stu-

---

[1] Michigan courts have long recognized that "murder is not always attended with the same degree of wicked design," and "may be committed in cold blood, and with much calculation, and it may be committed on a sudden impulse of passion, where the intent is formed and executed in the heat of blood . . . ." *People v Scott,* 6 Mich 287, 292 (1859); *People v Carter,* 387 Mich 397, 417; 197 NW2d 57 (1972).

dent who frequented the nearby area. Defendant was known to carry a gun, and a witness observed a gun in the waistband of defendant's pants a few hours after the shooting.

A few days after the murder, the police surveillance crew followed defendant to downtown Detroit and saw defendant and his two friends, Stephen Hall and John McMichael, throw items into the Detroit River. The police subsequently recovered a semiautomatic handgun, a loaded clip for the gun, and a box of ammunition from the river where defendant and his friends threw items into the water. The police continued to follow defendant and his friends from Detroit and saw defendant discard clothing in a dumpster at an apartment building along Nine Mile Road. The clothing was recovered and appeared to be in good condition.

Three other individuals were with defendant at the time of the Subway shooting. A witness, who was at the Subway shop before the shooting, testified that he saw four young men inside a black Ford Escort in the parking lot. Another witness saw defendant, Darian Hall, Carlton Banks, and Eric Whisnant get into Whisnant's black Escort and leave a nearby location immediately before the shooting occurred at the Subway. Three of defendant's friends (Darian Hall, Banks, and Stephen Hall) were formerly employed at the Subway. During a search of defendant's bedroom, the police found a series of articles cut from local newspapers about an earlier shooting at a Mobil gas station and the Subway killing.

At trial, testimony and other evidence convincingly demonstrated that defendant committed first-degree murder. Testimony revealed that defendant admitted

to Paul Bowman, Stephen Hall, and John McMichael that he shot the victim after she refused to give defendant any money and she had seen his face. Defendant also admitted to Bowman, McMichael, and Stephen Hall that two weeks before this crime he had robbed a Mobil gas station and shot one of the two employees. This evidence was admitted to prove that defendant—not someone else—was responsible for the shooting in this case. The trial court allowed the two Mobil gas station robbery victims to testify, and both identified defendant as the person that robbed the gas station and shot the employee. The gas station is located only a few miles from the Subway.

An inmate at the county jail testified that defendant admitted killing Ms. Garcia because she refused to give him any money and she might identify him. Defendant described details of the shooting that were consistent with the victim's wounds and these details had not been released to the media. Defendant also admitted to the inmate that he robbed the Mobil station and shot the employee. Defendant stated he wore gloves during the shootings, used the same .380-caliber gun in both shootings, and that he disposed of both the gun and the clothing when he went to the Detroit River with his friends. He admitted that he threw the gun into the water.

The police tested the gun recovered from the Detroit River and a police expert connected that gun to the bullets found at both the Subway and Mobil gas station scenes.

II

ANALYSIS

A. IMPARTIAL JURY

Defendant claims that his right to a fair and impartial jury was compromised (US Const, Am VI; Const 1963, art 1, § 20) because the subject of "gang bias" arose during voir dire, thereby tainting the entire venire. Yet, defendant failed to raise any objection when the subject arose and, indeed, neglected to raise the issue at a time when the court would have been in a position to address it. Instead, defendant waited until he filed a motion for a new trial. For this reason alone, defendant's appeal with regard to this point should be rejected. However, looking at the substance of defendant's complaint, we find his claims unmeritorious,

Defendant contends that the entire venire was tainted when a venireperson said that she thought that this case involved gangs. When asked by the trial court to explain what she had previously heard about this case, the venireperson stated that she had heard "something about" the case involving "gangs" and that she thought gangs were a "big problem." This venireperson was eventually dismissed as a result of a peremptory challenge by defendant.

Contrary to defendant's argument, the venireperson's comments did not taint the entire venire. The venireperson admitted that she only thought that this case involved gangs and that she was not sure because this was only gossip she heard before trial. No evidence was introduced linking defendant to an organized gang. Indeed, defendant himself asked this venireperson about her attitude toward gangs to

assess her impartiality. See *People v Bell*, 209 Mich App 273, 278; 530 NW2d 167 (1995) (no merit to the defendant's argument that the venire was tainted by prejudicial questioning where the defendant used the allegedly prejudicial information to test a venireperson's impartiality). On these facts, the trial court properly denied defendant's motion for a new trial.

### B. *BATSON* ISSUE

Defendant, an Asian-American, also contends erroneously that the prosecution's exclusion of members of minority groups from the jury denied him a fair trial under the Fourteenth Amendment, US Const, Am XIV, in violation of *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986).

To overcome a claim of discriminatory purpose, the prosecution must provide a racially neutral explanation for peremptorily excluding racial minorities from the venire, and the trial court must decide if the defendant proved purposeful discrimination. *People v Howard*, 226 Mich App 528, 534; 575 NW2d 16 (1997). We review a trial court's *Batson* ruling for an abuse of discretion. *Id.*

During the jury selection process, defendant objected to the prosecution's exercise of two peremptory challenges to remove the only two minority members of the venire. After the prosecution provided race-neutral reasons for dismissing the two venirepersons, the court concluded that the prosecution was not systematically excluding minority members. Nonetheless, the trial court said that if defendant was dissatisfied with the minority representation on the jury, the court would consider allowing additional peremptory challenges and adding additional

venirepersons. Despite this invitation, defendant accepted the trial court's ruling sustaining the peremptory challenges. An additional twenty venirepersons were later added, and defendant expressed satisfaction with the jury selected without requesting either additional challenges or a larger venire.

The record does not reveal the racial composition of the jury selected to hear this case. In light of the trial court's ruling and offer to address defendant's concerns about the racial composition of the jury, the trial court's ruling cured any possible problem with the selection process. Defendant's failure to reargue this issue or supplement the record regarding the racial composition of the jury says to us that he was satisfied with the prosecution's exercise of its remaining peremptory challenges and the final composition of the jury and he thus waived any claim of error. Indeed, in light of this record, defendant's *Batson* complaint is patently frivolous. See *People v Vaughn*, 200 Mich App 32, 40; 504 NW2d 2 (1993).

### C. OTHER CRIMES

Defendant further complains, again without merit, of the trial court's admission of evidence of defendant's involvement in the Mobil robbery a few weeks before this murder. The trial court properly admitted this evidence.

Evidence of other crimes, wrongs, or acts is admissible under MRE 404(b) if such evidence is (1) offered for a proper purpose and not to prove the defendant's character or propensity to commit the crime, (2) relevant to an issue or fact of consequence at trial, and (3) sufficiently probative to outweigh the danger of unfair prejudice, MRE 403. *People v Starr*,

457 Mich 490, 496-497; 577 NW2d 673 (1998); *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), opinion amended 445 Mich 1205 (1994).

Although the *VanderVliet* Court adopted a new test for admission of evidence under MRE 404(b), the four-part test of *People v Golochowicz*, 413 Mich 298, 309; 319 NW2d 518 (1982), remains valid to show logical relevance where similar-acts evidence is offered to show identification through modus operandi. *People v McMillan*, 213 Mich App 134, 138; 539 NW2d 553 (1995). The *Golochowicz* test requires that (1) there is substantial evidence that the defendant committed the similar act (2) there is some special quality of the act that tends to prove the defendant's identity (3) the evidence is material to the defendant's guilt, and (4) the probative value of the evidence sought to be introduced is not substantially outweighed by the danger of unfair prejudice. *Golochowicz, supra* at 307-309.

The prosecution filed a pretrial motion to admit similar-acts evidence, identifying the following similarities between the crimes as follows:

> A. Defendant committed both criminal acts and subsequently admitted to committing both and, indeed, the two victims in the Mobil robbery identified defendant as the robber and shooter;
>
> B. Defendant used a .380-caliber handgun in each incident;
>
> C. .380 shells were left at each location;
>
> D. The locations are approximately two miles apart;
>
> E. The incidents occurred within fourteen days of each other;
>
> F. During each incident, defendant had the intent to rob and the intent to kill, and took actions in furtherance of each intent;

G. Carlton Banks worked at Mobil and Subway and was with defendant both times;

H. Both incidents occurred at night immediately prior to closing time.

Accordingly, the prosecution established a similar pattern between the two crimes and satisfied the *VanderVliet* test. Furthermore, the similarity in the crimes pointed to defendant as the perpetrator of this crime. Thus, the similar-acts evidence was admitted for a proper purpose, namely, to prove that defendant committed this crime. The *Golochowicz* logical-relevance test was likewise satisfied by the substantial evidence that defendant committed the Mobil robbery and that these two crimes shared special qualities.

The important remaining question is whether the probative value of this evidence outweighed the danger of unfair prejudice. Because there were no eye-witnesses to testify at trial and there was strong evidence linking defendant to both crimes, we conclude that the trial court appropriately balanced the probative value without abusing its discretion and properly admitted evidence of defendant's earlier felonious conduct.

### D. PHOTOGRAPHS

Though defendant failed to raise this objection at trial, he now claims that the trial court abused its discretion in admitting photographs of the victim at the crime scene. The admission of photographs into evidence is within the trial court's discretion, so we review for abuse of discretion. *People v Flowers*, 222 Mich App 732, 736; 565 NW2d 12 (1997); *People v*

*Torres (On Remand)*, 222 Mich App 411, 415; 564 NW2d 149 (1997).

Admission of gruesome photographs solely to arouse the sympathies or prejudices of the jury may be error requiring reversal. *Howard, supra* at 549. However, a photograph that is otherwise admissible for some proper purpose is not rendered inadmissible because of its gruesome details or the shocking nature of the crime. *Id.*

Here, there was an important legitimate reason to admit these photographs. The critical issue was the identity of the murderer. The killing was carried out at close range, yet clothing that defendant wore on the night of the shooting did not contain any of the victim's blood. The prosecution introduced photographs of the victim for the important purpose of showing that blood had pooled around her head rather than splattering when the victim was shot, which explained the absence of the victim's blood on defendant's clothing. On these facts, the admission of the photographs was proper.

### E. JURY INSTRUCTIONS

Defendant also claims instructional error. Defendant asked the court to read CJI2d 5.5 and 5.6 (the disputed-accomplice instructions) for *four* witnesses. The court agreed to read the instructions with regard to only *two* witnesses, declining to apply the instructions to the testimony of Paul Bowman or Lavelle Matthews.

Ordinarily, where a defendant requests a cautionary instruction regarding an accomplice's testimony, a trial court is required to give that instruction. *People v Reed*, 453 Mich 685, 691-693; 556 NW2d 858 (1996).

However, a trial court is required to give requested instructions only if the instructions are supported by the evidence or the facts of the case. *People v Piper*, 223 Mich App 642, 648; 567 NW2d 483 (1997). The determination whether a jury instruction is applicable to the facts of the case lies within the sound discretion of the trial court. *People v Perry*, 218 Mich App 520, 526; 554 NW2d 362 (1996).

Here, there was no error because there was no evidence that either Matthews or Bowman were involved in the robbery or shooting at the Subway. Furthermore, because Matthews was present only at the Mobil gas station, if he arguably was an accomplice, he was not an accomplice for the crimes for which defendant was being tried in this case. The trial court correctly found that the disputed-accomplice instruction for Matthews might confuse the jury.

F. RIGHT TO CONFRONT WITNESS

Defendant claims that his right to confront the witnesses against him was impaired when a witness invoked the Fifth Amendment. He is wrong.

A defendant has a constitutional right to confront the witnesses against him, US Const, Am VI; Const 1963, art 1, § 20. If a defendant has been limited in his ability to cross-examine the witnesses against him, his constitutional right to confront witnesses may have been violated. *People v Cunningham*, 215 Mich App 652, 657; 546 NW2d 715 (1996). Yet, there are limits to this right to confront witnesses. The Confrontation Clause " 'guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " *People v Bushard*,

444 Mich 384, 391; 508 NW2d 745 (1993) (BOYLE, J.), quoting *Delaware v Fensterer*, 474 US 15, 20; 106 S Ct 292; 88 L Ed 2d 15 (1985). Rather, the Confrontation Clause protects the defendant's right for a *reasonable* opportunity to test the truthfulness of a witness' testimony. *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993).

At trial, the witness invoked the Fifth Amendment during cross-examination by defense counsel, after the prosecutor had already conducted the direct examination. Importantly, a few days after the witness invoked his right to remain silent, he retained new counsel, changed his mind, and decided that he would continue to testify. The prosecutor offered to recall the witness so that defense counsel could complete his cross-examination. The trial court ruled that the prosecution could recall the witness for this purpose because neither party had suspected that the witness intended to invoke his right to remain silent before he was called to testify. However, defense counsel *declined* to further examine the witness, believing (as a matter of trial strategy) that effective cross-examination of the witness was impaired because of the length of time that had lapsed.

Because the witness was later available for cross-examination, defendant failed to demonstrate that his right to confront this witness was infringed. Defendant failed to make an adequate offer of proof explaining why examining the witness at a later date impaired his ability to conduct an effective examination. Accordingly, defendant has failed to show that his right to confront this witness was impaired to the extent requiring reversal.

### G. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that his trial counsel was ineffective in failing to object (1) to the comment made during voir dire about gangs, (2) to the admission of photographs of the deceased, and (3) to the court's order for restitution. While defendant raised this issue in his motion for a new trial, there was no request for an evidentiary hearing. Furthermore, defendant did not move to remand this matter back to the trial court for an evidentiary hearing. This Court's review is therefore limited to the current record. *People v Wilson*, 196 Mich App 604, 612; 493 NW2d 471 (1992).

To warrant a remand for a new trial, defendant must show that his counsel's performance fell below an objective standard of reasonableness and that the representation so prejudiced defendant that he was denied the right to a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). The defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *People v Mitchell*, 454 Mich 145, 156; 560 NW2d 600 (1997).

Assuming counsel had objected, the outcome regarding these issues would not have been different. Defendant has not shown that he was prejudiced by his counsel's conduct. Defendant also has not shown that this case merits a remand to the trial court for an evidentiary hearing regarding counsel's performance. *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973); *People v Simmons*, 140 Mich App 681, 685-686; 364 NW2d 783 (1985).

### H. RESTITUTION

Finally, defendant complains about the court's decision to impose restitution. In the judgment of sentence, the trial court ordered defendant to pay $11,864.22 in restitution. Defendant argues that the trial court imposed this amount of restitution as compensation to the victim's family for the reward money offered and that under § 16 of the Crime Victim's Rights Act, MCL 780.766; MSA 28.1287(766), restitution was not properly awarded to repay any money offered as a reward. There is no support in the record for defendant's argument.

The trial court ordered defendant to pay $11,864.22 to the victim's family for funeral and burial expenses. Defendant has failed to show that this money was actually to compensate the victim's family for any reward money paid. There also is nothing in the record to show that the victim's family (rather than other members of the community) provided the $11,000 in reward money. Thus, we decline to set aside the court's award for restitution.

Defendant also argues that the trial court failed to consider whether defendant had the ability to pay. Under MCL 780.766(2); MSA 28.1287(766)(2), the trial court was required to order restitution. Defendant waived any argument about his ability to pay restitution when he failed to object at the time of sentencing. *People v Gahan*, 456 Mich 264, 276, n 17; 571 NW2d 503 (1997). The trial court was not required to conduct an evidentiary hearing to determine if defendant had the ability to pay restitution, and it could rely upon the presentence investigation report or a separate report. The court was not required to make findings on the record related to defendant's

ability to pay restitution unless defendant objected. *People v Grant*, 455 Mich 221, 224, n 4, 242-243; 565 NW2d 389 (1997);    MCL 780.767(1), (2);    MSA 28.1287(767)(1), (2).    By failing to raise this issue below at the time of sentencing, defendant has waived any claim of error.

Because defendant failed to raise any meritorious issues on appeal, we affirm his convictions of this cold-blooded murder and felony-firearm.

Affirmed.