# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 14, 2017

Plaintiff-Appellee,

v

No. 332009
Wayne Circuit Court
LC No. 15-006182-03-FC

JOHNNY WAYNE DAVIS,

Defendant-Appellant.

Before: GADOLA, P.J., and CAVANAGH and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of second-degree murder, MCL 750.317, first-degree home invasion, MCL 750.110a(2), and torture, MCL 750.85. The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to consecutive prison terms of 27 to 40 years for the murder conviction and 20 to 40 years for the home-invasion conviction, and a concurrent prison term of 20 to 40 years for the torture conviction. We affirm.

## I. BACKGROUND

Defendant's convictions arise from a brutal attack on the victim, Eleanor Blevins, after a group of three men broke into her motel room. On the evening of July 4, 2015, defendant, Chiram Armstead, and Kyle Kelly arrived at the Victory Inn in Detroit and began pounding on the windows and doors of a motel room there. As the three men were attempting to break into her motel room, the victim called 911 requesting assistance. Eventually, Armstead was able to push open a window. Armstead entered the room, opened the door, and the other two followed him in, while the victim remained on the phone with 911.

A recording of the 911 call was played for the jury and indicated that, shortly after gaining entrance, someone asked the victim for money. When the victim responded that she did not have any money, the person told her that she "got to die then." At that point, Armstead began to beat severely the victim and strangle her, eventually causing her death. Much of what happened was recorded on the motel's video surveillance system. Videos from this system were played for the jury and indicated that not only did defendant remain in the room during the attack, he also positioned himself in the doorway so as to block the victim's exit. At some point in the attack, the victim's wig fell off of her head. Surveillance video shows that defendant

-1-

picked up the wig and wiped the door handle with it. The video shows defendant and the other two perpetrators leaving with bags from the victim's motel room.

Defendant admitted that he was present for the attack, but testified that he believed the room was rented to Armstead and the items taken from there belonged to Armstead. Defendant also argued that he tried, albeit unsuccessfully, to break up the fight. Defendant admitted that he used the wig to wipe away trace evidence, but averred that he did so because he did not want to be liable for damage to the room.

Before trial, the three defendants attempted to preclude the prosecutor from admitting autopsy photographs depicting the victim's injuries in their individual cases. Another judge issued a pretrial ruling that some of the photographs were admissible but others were not. Defendant renewed the motion before the trial judge at his trial. The trial judge stated that he was not bound by the other judge's decision and would determine the admissibility of the photographs himself. When defendant moved to exclude the photographs as undue prejudicial under MRE 403, given their gruesome nature, the court denied the motion, apparently without viewing the photographs, stating:

> [I]f the defendant was the perpetrator of this crime or aided and abetted in the perpetration of this crime or these crimes, then he has to rise or fall on what the product is of his work. So I don't find any photograph prejudicial in regard to a victim's injuries, nothing, and never have and never will.

Several photographs were presented to the jury, depicting various aspects of the victim's injuries. Among other injuries, these photos depicted large cuts and bruising to the victim's face, shoulders, and neck, black marks on the skull and underside of her scalp, and a massive hemorrhage near the base of the victim' brain.

Although the evidence identified Armstead as the person who primarily attacked the victim, the prosecution argued that defendant was guilty of first-degree murder, home invasion, and torture, under an aiding or abetting theory. The jury acquitted defendant of first-degree murder, but convicted him of the lesser included offense of second-degree murder, as well as the charged offenses of first-degree home invasion and torture.[1]

## II. ANALYSIS

*Photographs Depicting the Victim's Injuries Were Admissible.* Defendant first argues that the trial court abused its discretion by admitting the autopsy photographs of the victim. We review a trial court's decision to admit photographs into evidence for an abuse of discretion. *People v Ho*, 231 Mich App 178, 187; 585 NW2d 357 (1998). In determining the admissibility

---

[1] Armstead and Kelly were also charged with first-degree murder, first-degree home invasion, and torture. Armstead was tried separately and a jury convicted him as charged. Kelly pleaded guilty of second-degree murder, with a sentence agreement of 28½ to 50 years, in exchange for dismissal of the remaining charges.

of evidence, the trial court has a duty to review the proffered evidence and determine its relevance to the question at issue, MRE 402, and whether the evidence should be excluded as unduly prejudicial, MRE 403. In this case, the trial court did neither, and instead denied defendant's motion as a matter of principle. In doing so, the trial court erred by abdicating its judicial responsibility. *People v Stafford*, 434 Mich 125, 134 n 4; 450 NW2d 559 (1990).

Nonetheless, an evidentiary error is presumed to be harmless unless, " 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999), quoting MCL 769.26. Moreover, this Court will not reverse a conviction when the trial court reaches the right result for the wrong reason. *People v Lyon*, 227 Mich App 599, 612-613; 577 NW2d 124 (1998). Therefore, we must now consider whether the photographs were admissible as evidence, specifically, whether the photographs should have been excluded as unduly prejudicial under MRE 403.

The photographs showed, in graphic detail, just what happened to the victim inside the motel room, and were obviously prejudicial to defendant. But any evidence offered against a party is "by its very nature . . . prejudicial, otherwise there would be no point in presenting it." *People v Fisher*, 449 Mich 441, 451; 537 NW2d 577 (1995). The essential question under MRE 403 is whether the evidence is *unfairly* prejudicial. Generally, evidence is unfairly prejudicial if there is "a danger that marginally probative evidence will be given undue weight or preemptive weight by the jury," *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998), if it would lead the jury to decide the case on an improper basis such as emotion, *People v Meadows*, 175 Mich App 355, 361; 437 NW2d 405 (1989), or if "it would be inequitable to allow the use of the evidence," *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

Here, the photographs were highly probative, particularly with respect to the charges of murder and torture, because few witnesses testified as to the specifics of what took place inside the motel room and a large part of the attack was not observable on the surveillance videos. Some of the pictures documented massive bruising and diffuse bleeding of the brain and were indicative of the ferocity of the attack; other pictures showed linear injuries to the neck indicating that someone attempted to strangle the victim. The photographs were therefore highly relevant to the charged crimes, in that they tended to prove the nature and extent of the victim's injuries. *People v Mills*, 450 Mich 61, 71, 76; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). As the trial court alluded to in its ruling, defendant was on trial for aiding and abetting a horrific crime resulting in charges of both murder and torture. Although the photographs were indeed graphic, we conclude that the photographs were offered for a proper purpose relevant to the charges against defendant, and were not so shocking as to outweigh substantially their probative value to this case. MRE 403.

Accordingly, while the trial court erred in refusing to examine the evidence, because the evidence would have nonetheless been admissible had the trial court properly examined it, we conclude that defendant is not entitled to relief on this issue.

*The Evidence Was Sufficient to Convict Defendant.* Defendant next argues, both through counsel and in a pro se Standard 4 brief,[2] that the evidence offered at trial was insufficient to support his convictions. We disagree. A challenge to the sufficiency of the evidence is reviewed de novo on appeal. *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). "Evidence is sufficient if, when viewed in the light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016) (internal quotation marks and citation omitted). All conflicts in the evidence are resolved "in favor of the prosecution." *Id*.

To establish second-degree murder, the prosecutor must prove "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). Malice, for purposes of murder, is defined as "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Goecke*, 457 Mich 442, 464; 579 NW2d 868 (1998).

First-degree home invasion can be committed in a number of ways. The elements of the crime are: (1) the defendant (a) broke and entered a dwelling, or (b) entered a dwelling without permission, (2) the defendant (a) intended, when entering the dwelling, to commit a felony, larceny, or assault therein, or (b) committed a felony, larceny, or assault at any time while entering, present in, or exiting the dwelling, and (3) when the defendant entered, was present in, or was leaving the dwelling, (a) he was armed with a dangerous weapon, or (b) another person was lawfully present in the dwelling. MCL 750.110a(2); *People v Wilder*, 485 Mich 35, 43; 780 NW2d 265 (2010).

As for the crime of torture, it has the following elements: (1) the defendant had custody or physical control over the victim, (2) the defendant exercised custody or physical control over the victim without her consent or without lawful authority, (3) while the defendant had custody or physical control over the victim, he intentionally caused great bodily injury and/or severe mental pain or suffering to the victim, and (4) the defendant intended to cause the victim to suffer cruel or extreme physical pain or mental pain and suffering. MCL 750.85(1); M Crim JI 17.36.

Defendant's liability was predicated upon his status as an aider or abettor. A person aids or abets in the commission of a crime if that person "is present at the crime scene and by word or deed gives active encouragement to the perpetrator of the crime, or by his conduct makes clear that he is ready to assist the perpetrator if such assistance is needed." *People v Moore*, 470 Mich 56, 63; 679 NW2d 41 (2004) (internal citation and quotation notation omitted). The elements necessary for a conviction as an aider and abettor are (1) the charged offense was committed by the defendant or another person, (2) the defendant performed acts or gave encouragement that

---

[2] The Standard 4 brief was filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4.

-4-

assisted in the commission of the charged offense, and (3) the defendant intended the commission of the charged offense, the defendant knew that the other person intended to commit the charged offense, or the charged offense was a natural and probable consequence of the commission of the intended offense. *People v Robinson*, 475 Mich 1, 6, 15; 715 NW2d 44 (2006); see also M Crim JI 8.1.

The evidence clearly established that Armstead committed each of the charged offenses. Armstead broke into the victim's motel room, brutally assaulted her while she was trapped, and stole several of her belongings on his way out. Defendant's culpability in these crimes is equally clear under the record. Defendant helped Armstead break into the room and, if he was not the one speaking to Blevins himself, he was present when a codefendant threatened to kill Blevins. Defendant remained in the room while Armstead assaulted the victim, and defendant crowded the doorway to block the victim's main avenue of escape. Defendant wiped trace evidence off the door with the victim's wig, and he carried bags of the victim's belongings from the room. Viewed in a light most favorable to the prosecution, the evidence showed that defendant was not merely present, but was acting in concert with Armstead and shared Armstead's intent to commit the offenses. The evidence was therefore sufficient to support each of defendant's convictions under an aiding or abetting theory.

*Defendant Waived Any Objection to the Jury Instructions.* In his Standard 4 brief, defendant argues that the trial court failed to instruct properly the jury on the elements of second-degree murder, specifically, the element of malice. At trial, however, defense counsel indicated that defendant had no objection to the jury instructions. Defense counsel's affirmative statement that defendant had no objection to the jury instructions waives appellate review of that issue. *People v Kowalski*, 489 Mich 488, 504-505; 803 NW2d 200 (2011); *People v Matuszak*, 263 Mich App 42, 57; 687 NW2d 342 (2004). Moreover, even had the issue not been waived, the record discloses that the trial court instructed the jury in accordance with M Crim JI 16.5, and that the instruction accurately stated the elements of second-degree murder, including malice.

*Defendant's Sentence Was Proper.* Finally, defendant raises two issues related to the trial court's decision to impose consecutive sentences for the murder and home invasion convictions. First, defendant argues that the trial court abused its discretion in opting to impose consecutive sentences. Next, defendant argues that the sentences amounted to cruel or unusual punishment. Decisions to impose consecutive sentences are ordinarily reviewed for an abuse of discretion, *People v Norfleet*, 317 Mich App 649, 654; 897 NW2d 195 (2016), and overturned only when the trial court's decision falls outside the range of reasoned and principled outcomes, *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). Nonetheless, because defendant did not raise either sentencing issue with the trial court, we review these issues for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

With regard to the trial court's exercise of discretion in imposing consecutive sentences, defendant argues that the trial court must have been biased against him because it referred to him as a "savage" just before imposing sentence. Nonetheless, comments critical of or hostile to a party ordinarily do not support a finding of bias, *People v Wells*, 238 Mich App 383, 391; 605 NW2d 374 (1999), and this is particularly true at sentencing, when language "need not be tepid," *People v Antoine*, 194 Mich App 189, 191; 486 NW2d 92 (1992).

MCL 750.110a(8) authorizes the trial court, in its discretion, to "order a term of imprisonment imposed for home invasion in the first degree to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction." Considering that the victim was brutally assaulted during the course of a home invasion, and that the assault caused the victim's death, we do not find that the trial court's imposition of consecutive sentences for the home invasion and murder convictions was outside the range of reasoned and principled outcomes.

Regarding defendant's second argument, a sentence constitutes cruel and unusual punishment when it is grossly disproportionate to the seriousness of the circumstances surrounding the offense and the offender. *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990); *People v Bullock*, 440 Mich 15, 32; 485 NW2d 866 (1992). "[A] sentence that falls within the guidelines range is presumptively proportionate, and a sentence that is proportionate is not cruel or unusual punishment." *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008) (internal citations omitted). In determining whether a punishment is so disproportionate as to be constitutionally cruel or unusual, this Court looks to the gravity of the offense and the harshness of the penalty, compares the penalty to that imposed for other crimes in this state and to the penalty imposed for the same offense in other states, and considers the goal of rehabilitation. *People v Launsburry*, 217 Mich App 358, 363; 551 NW2d 460 (1996).

Defendant has not undertaken this type of an analysis. He argues only that, given the length of time he will have to serve due to the imposition of consecutive sentences, his sentences are not much different than life without parole. The fact that defendant may serve the remainder of his life in prison, however, does not render his sentences cruel or unusual. *People v Bowling*, 299 Mich App 552, 558-559; 830 NW2d 800 (2013). Moreover, because the trial court sentenced defendant within the sentencing-guidelines range, defendant's sentences are presumptively proportionate. The fact that defendant's sentences are to be served consecutively does not overcome the presumption of proportionality, *People v St. John*, 230 Mich App 644, 649; 585 NW2d 849 (1998), and defendant has not provided this Court with any other evidence sufficient to meet his burden to show plain error.

Affirmed.

/s/ Michael F. Gadola
/s/ Mark J. Cavanagh
/s/ Brock A. Swartzle