*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MING C. HO,

        Defendant-Appellant.

UNPUBLISHED
September 7, 2023

No. 360928
Oakland Circuit Court
LC No. 1994-136287-FC

Before: PATEL, P.J., and BOONSTRA and RICK, JJ.

PER CURIAM.

A jury found defendant guilty of one count of first-degree premeditated murder, MCL 750.316, and one count of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was initially sentenced, as a juvenile offender, to life without parole for his first-degree murder conviction and two years' imprisonment for his felony-firearm conviction. Defendant was resentenced, in accordance with *Miller v Alabama*, 567 US 460, 461; 132 S Ct 2455; 183 L Ed 2d 407 (2012), to 40 to 60 years' imprisonment for his first-degree murder conviction, and 2 years' imprisonment for his felony-firearm conviction. Defendant now appeals as of right his resentencing and challenges the trial court's denial of his motion for resentencing. We affirm.

## I. BACKGROUND

This Court summarized the underlying facts in defendant's prior appeal as follows:

In this heinous crime, defendant murdered teen-aged Angela Garcia in cold blood in October of 1994, while she was working alone in a Subway restaurant in Troy. There were no eyewitnesses to this killing available to testify at trial. Acting on tips, the police initiated surveillance of defendant, a high school student who frequented the nearby area. Defendant was known to carry a gun, and a witness observed a gun in defendant's pants' waistband a few hours after the shooting.

\* \* \*

-1-

At trial, testimony and other evidence convincingly demonstrated that defendant committed first-degree murder. Testimony revealed that defendant admitted to [three friends] that he shot the victim after she refused to give defendant any money and she had seen his face. Defendant also admitted to [his friends] that he robbed a Mobil gas station two weeks before this crime, and shot a Mobil gas station employee. [*People v Ho*, 231 Mich App 178, 180-182; 585 NW2d 357 (1998).]

In 2016, the prosecution filed a notice stating it would be seeking resentencing in accordance with *Miller*, 567 US 461. The trial court entered an order granting resentencing and scheduling a hearing on the matter.

In a resentencing memorandum submitted to the trial court, defendant asked to be resentenced to 27 to 60 years' imprisonment for his first-degree murder conviction. Defendant's memorandum included extensive details about his upbringing, including information indicating that his father was diagnosed with paranoid schizophrenia when defendant was a child, and that his father was abusive toward him and his mother. Defendant acknowledged that he had committed some infractions while in prison, but noted that the last infraction occurred in 2005. Defendant explained that since then, he had been trying to take full advantage of educational and vocational opportunities while incarcerated. Defendant stated that he completed his GED, obtained certification in the field of automotive technology, and worked as a tutor. Defendant also stated that he had received several positive job evaluations. He believed he had created a positive support network outside of prison, which would help him if he were to be granted parole, and asked that the court consider resentencing him to a term-of-years sentence of 27 to 60 years.

Defendant further noted that his prison record overwhelming demonstrated that he has been successfully rehabilitated. Numerous exhibits were attached to defendant's resentencing memorandum in support of this assessment. These exhibits included a mitigation report, which discussed defendant's rehabilitation, personal growth, childhood upbringing, behavior while incarcerated, and remorse for his crimes. Defendant explained that his traumatic upbringing contributed to the actions underlying his convictions. He also stated that his youth at the time of the offense was a mitigating factor, because he was unable to appreciate the risks and consequences associated with his actions. Defendant further noted that peer pressure, marijuana use, and a lack of premeditation should also be taken into consideration during resentencing. He believed that, but for his youth at the time of the offense, he would have had a better understanding of his possibility of success at trial, and might have sought a plea agreement in lieu of going to trial. Finally, defendant stated that based on his prison record, he had been adequately disciplined for his actions.

The prosecution disagreed with defendant's request to be resentenced to 27 to 60 years' imprisonment, and instead asked the court to resentence defendant to 40 to 60 years' imprisonment. The prosecution explained that although defendant had no juvenile record or police contacts before he committed the murder, defendant admitted to engaging in criminal activity. It further observed that before defendant brought the issue up in his resentencing memorandum, there was no evidence presented to support the claim that defendant came from an unstable home environment. The prosecution also noted that defendant did not commit the murder due to a lack of intelligence, and that there was no evidence of peer pressure. According to the prosecution,

defendant admitted he "decided to kill people so there would be no witnesses." Defendant's testimony at trial suggested that his actions were "cold and calculating," rather than the result of "the transient behavior of youth." Moreover, the prosecution noted that testimony from defendant's trial showed that he was an active participant in the murder, and that he even bragged about killing people.

Although the prosecution agreed that defendant had not committed an infraction while in prison since 2005, he spent most of his imprisonment as a Level V offender and committed numerous assaultive offenses while incarcerated. At one point, he was convicted of being a prisoner in possession of a weapon, MCL 800.283(4), for which he received an additional sentence of 3 to 5 years' imprisonment on top of the time he was already serving. Numerous attachments were included with the prosecution's resentencing memorandum, including a 1995 psychological report, and a 2016 assessment narrative. The psychological report indicated that defendant was "polite" and "friendly," and accepted "complete responsibility for his actions and expressed his remorse for the victims." The assessment narrative indicated defendant had a supportive social network, and was unlikely to have a substance abuse problem. However, the report also contained evidence that defendant possessed some antisocial attitudes regarding the crime, including "moral justification for his criminal behavior, minimiz[ing] the seriousness or consequences of his criminal activity[.]" Nevertheless, the report noted that defendant presented a low risk for recidivism.

During the resentencing hearing, the trial court assessed the *Snow*[1] and *Miller*[2] factors, expressly reviewing: (1) defendant's youth at the time of his crimes; (2) the circumstances of defendant's crimes; (3) defendant's disciplinary record while incarcerated; (4) defendant's home environment; (5) defendant's educational background; (6) the influence of peer pressure on defendant; (7) defendant's efforts toward rehabilitation, including his job history, educational pursuits, certifications, letters of support, and volunteer work; (8) the impact of defendant's youth on his ability to assist with his case; (9) defendant's record before his period of incarceration; and (10) defendant's remorse for his crimes. The trial court resentenced defendant to 40 to 60 years' imprisonment for his first-degree murder conviction and two years' imprisonment for defendant's felony-firearm conviction, stating, in relevant part:

> This definitely is a heinous crime . . . and it has impacted the [victim's] family for a long, long time. And the great—I'll say borderline smartness, close to an area of brilliance in helping in the prison system, and learning, and getting certificates, I'm not ignoring that. I think that you should continue with working to help others in the prison system. Continue working to improve yourself towards total rehabilitation. Continue towards acceptance of the egregious act that you did in the case before this Court, in the case that resulted in a case a couple weeks earlier, and everything that's happened in prison.

---

[1] *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972).

[2] *Miller*, 567 US at 461 (2012).

And I also think that you have not completely accepted your involvement in the killing . . . . I believe that you need to face that fact. I haven't seen anything in any reports that were submitted to the Court that indicate that [defendant's friends] engaged in shootings, or killings, or activities with guns prior to your involvement with a gun in your hand on the occasions that have been discussed here at this resentencing. I haven't seen that.

And I understand the argument about peer [pressure], but I also have seen a lot of things when you sit where I sit and that's something that's missing.

\* \* \*

But the thing that I'm also cognizant of because I sit where I sit, is—it's pretty clear that you, [defendant], were not diagnosed with a mental disorder at the time that this occurred . . . nor is there an indication that you were out of your mind due to drugs or alcohol at the time of the killing.

And you're smart. You're very smart and I don't really see, other than the representations in the *Miller* versus *Alabama* case, to the issue of brain development and youth. I don't see any other typical factors in a killing this heinous because it was heinous.

And so, I think that to the best of my ability I give you credit for being cooperative knowing that you were facing a life max with no chance for parole at the time . . . . But I cannot ignore the totality of circumstances and I do believe that [defendant] has the potential to reach full rehabilitation, but I think he's go[t] to do more acceptance and I haven't seen anything showing that. No deep, mental health evaluation concerning that issue.

Therefore, considering the totality of circumstances . . . it is the order of this Court taking into consideration the totality of circumstances, past record or lack thereof, potential for rehabilitation, punishment, deterring others in committing similar offenses and noting that today he does have the seven prior felonies on the record.

Following resentencing, defendant appealed to this Court. While his appeal was pending, defendant moved for resentencing under MCR 6.429 in the trial court. Defendant argued that he was denied the effective assistance of counsel because his counsel failed to provide the trial court with a copy of a psychological evaluation and risk assessment at resentencing. Defendant submitted that defense counsel's failure did not constitute sound trial strategy, and, but for counsel's error, he would have received a reduced sentence. Defendant also averred he was entitled to resentencing because his sentence was unreasonable, disproportionate, and based on inaccurate information.

A hearing was held on the motion for resentencing. Defendant argued that he presented a prima facie case of ineffective assistance of counsel, or, in the alternative, enough information to

justify granting a *Ginther*[3] hearing. The trial court denied defendant's motion for resentencing. The court found that defendant failed to establish that he was denied the effective assistance of counsel, or that his sentence was unreasonable, disproportionate, or based on inaccurate information. We now address defendant's issues on appeal.

## II. ANALYSIS

## A. DISPROPORTIONATE SENTENCE

Defendant contends that the trial court abused its discretion by denying defendant's motion for resentencing because the trial court relied on inaccurate information during resentencing. Defendant argues that his 40- to 60-year sentence is unreasonable and disproportionate. We disagree.

Defendant was resentenced in accordance with *Miller*, 567 US 460. We review a trial court's sentencing decision, including a juvenile offender's resentencing after *Miller*, for an abuse of discretion. *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022). An abuse of discretion occurs when the trial court chooses an outcome that is outside the range of principled outcomes. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010).

Under MCL 769.25, juveniles previously sentenced to life without parole may be resentenced "to a term of imprisonment for which the maximum term shall be not less than 60 years and the minimum term shall be not less than 25 years or more than 40 years." Thus, defendant's 40- to 60-year sentence falls within the statutory guidelines. In the past, provided that a defendant was sentenced based on accurate information, this Court would be required to affirm defendant's sentence outright. But in *People v Posey*, ___ Mich ___; ___ NW2d ___ (2023) (Docket No. 162373), our Supreme Court overruled the portion of *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016), and MCL 769.34(10), requiring appellate courts to affirm within-guidelines sentences. Prior to *Posey*, *Schrauben* and MCL 769.34(10) stated that "[w]hen a trial court does not depart from the recommended minimum sentencing range, the minimum sentence must be affirmed unless there was an error in scoring or the trial court relied on inaccurate information." *Id*. at 196, citing MCL 769.34(10). The *Posey* Court found that the portion of MCL 769.34(10) requiring an appellate court to automatically affirm a within-guidelines sentence, provided that it is based on accurate information, violates a defendant's Sixth Amendment rights because doing so "would necessarily render the guidelines mandatory." *Posey*, ___ Mich at ___; slip op at 30.

Following *Posey*, appellate courts must now "review all sentences for reasonableness, which requires the reviewing court to consider whether the sentence is proportionate to the seriousness of the matter," *Posey*, slip op at 29, in accordance with the sentencing principles outlined in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), and *People v Steanhouse*, 500 Mich 453; 902 NW2d 327 (2017). Accordingly, we conclude that defendant's term-of-years sentence must "be proportionate to the seriousness of the circumstances surrounding the offense

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

and the offender." *Steanhouse*, 500 Mich at 472. Factors that may be considered by a trial court under the proportionality standard include, but are not limited to:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Walden*, 319 Mich App 344, 352-353; 901 NW2d 142 (2017).]

Additionally, "[T]he guidelines remain important as an advisory resource for sentencing courts and continue to be a highly relevant consideration on appeal." *Posey*, ___ Mich at ___; slip op at 29.

Initially, defendant argues that the trial court relied on inaccurate information during resentencing because it concluded that defendant needed to take further responsibility for his crimes and engage in additional rehabilitation. Defendant says this conclusion was contrary to the information in his psychological evaluation, which demonstrated that he took responsibility for his actions, had a lower than average risk for reoffending, and had been successfully rehabilitated. However, as previously discussed, except for the information about his risk of recidivism, defendant's resentencing memorandum and the attached mitigation report addressed all of the same factors as the psychological evaluation and reached nearly identical conclusions. Further, the 2016 assessment narrative, which was provided to the trial court, concluded that defendant presented a low risk for recidivism. On this record, there is no support for defendant's claim the trial court relied on inaccurate information during resentencing.

Defendant nevertheless says that his sentence was unreasonable and disproportionate because the trial court adopted the prosecutor's sentencing recommendation in lieu of conducting an individualized assessment of defendant's characteristics and behaviors, as well as the circumstances surrounding the offense. However, a review of the record belies this assessment. Although the trial court did ultimately agree with the prosecutor's recommendation that defendant be resentenced to 40 to 60 years' imprisonment, the trial court also expressly evaluated the factors set forth in *Miller* and *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972), in making its ruling. Specifically, the trial court addressed defendant's youth at the time of the offense, his disciplinary record and efforts toward rehabilitation, his home environment and educational background, the effects of peer pressure and other circumstances surrounding the case, his prior criminal record, the impact of youth on his ability to assist with his case, and his remorse for his actions. Despite the fact that defendant demonstrated significant efforts at self-improvement and rehabilitation over the years, the trial court nevertheless continued to believe that defendant was not fully rehabilitated because he continued to blame peer pressure for his actions. The court further highlighted the severity of the crime committed, reiterating that defendant had not yet accepted full responsibility for the murder, which it described as a "heinous" crime. The court then expressed that defendant needed to continue his efforts toward rehabilitation. Thus, along with the *Miller* and *Snow* factors, the court also considered the seriousness of the offense, defendant's past misconduct while in custody, his expressions of remorse, and his potential for total rehabilitation. Accordingly, we conclude that defendant's resentencing to a term-of-years sentence was reasonable and proportionate. He is not entitled to resentencing.

B.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next claims he was denied the effective assistance of counsel because defense counsel's failure to provide an updated psychological evaluation to the trial court was not sound trial strategy.  Defendant contends that he likely would have been resentenced to a lesser term of years if the psychological evaluation had been completed and submitted to the trial court before resentencing.

"Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law."  *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016).  The trial court's factual findings are reviewed for clear error, while the constitutional determination of whether the defendant's right to counsel was violated is reviewed de novo.  *People v Rosa*, 322 Mich App 726, 741 n 8; 913 NW2d 392 (2018).  A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made.  *People v Armstrong*, 305 Mich App 230, 242; 851 NW2d 856 (2014).  "Where, as here, there has been no evidentiary hearing on the issue below . . . our review is limited to errors apparent on the record."  *People v Seals*, 285 Mich App 1, 19-20; 776 NW2d 314 (2009).

"To prove that his defense counsel was not effective, the defendant must show that (1) defense counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that counsel's deficient performance prejudiced the defendant."  *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014).  "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy."  *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012).  A "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel."  *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).  Likewise, to establish prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018) (quotation marks and citation omitted).

Defendant claims his counsel's performance was deficient because counsel failed to obtain a psychological evaluation and submit it to the trial court before resentencing.  As previously discussed, defendant's resentencing memorandum and mitigation report both provided extensive details about his upbringing, the negative influence of peer pressure from his adolescent friends, defendant's tumultuous initial period in prison, as well as defendant's rehabilitative efforts while incarcerated, and his remorse for his crimes.  Similarly, the later-submitted psychological evaluation details defendant's traumatic upbringing, the influence of peer pressure on defendant, defendant's personal growth and rehabilitation, and remorse for his crimes.

When asked why a psychological evaluation was not provided ahead of resentencing, counsel stated: "We did not believe [defendant's] home life and prison conduct merited it."  "[D]ecisions regarding what evidence to present and which witnesses to call are presumed to be matters of trial strategy, and we will not second-guess strategic decisions with the benefit of hindsight."  *People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013).  The mere fact that trial counsel did not seek to admit all evidence that may have been admissible is

insufficient to overcome the "strong presumption that counsel engaged in sound trial strategy." *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Here, given that extensive evidence of defendant's upbringing, incarceration, rehabilitation, and remorse was already presented to the trial court through defendant's sentencing memorandum and the mitigation report, counsel's decision to not admit duplicative evidence through a psychological evaluation is not objectively unreasonable, nor does it overcome the "strong presumption that counsel engaged in sound trial strategy." *Id.* Any further factual development that could be gained from the admission of the psychological evaluation likely would not have been sufficient to support defendant's request that he be resentenced to a lower term of years. See *Hoag*, 460 Mich at 6 (1999); *Chapo*, 283 Mich App at 369 (2009). Because defendant has not shown that, but for counsel's performance, the outcome would have been different, his ineffective assistance of counsel claim must fail.

## III. CONCLUSION

Defendant's sentences were based on accurate information and are reasonable and proportionate. Thus, we conclude that the trial court did not abuse its discretion by resentencing defendant to 40 to 60 years' imprisonment. We further conclude that trial counsel was not constitutionally deficient for declining to submit a psychological evaluation prior to defendant's resentencing hearing. Defendant is not entitled to resentencing in this matter.

Affirmed.

/s/ Sima G. Patel
/s/ Mark T. Boonstra
/s/ Michelle M. Rick