# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SOONEJOO KIM GRAHAM,

        Defendant-Appellant.

UNPUBLISHED
April 17, 2018

No. 337780
Jackson Circuit Court
LC No. 15-005667-FH

Before: GADOLA, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his conviction of first-degree home invasion, MCL 750.110a(2). The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to 15 to 40 years' imprisonment. We affirm.

## I. FACTS

This case arises out of a home invasion that occurred July 2, 2014, in Jackson County, Michigan. Courtney Husak, who was visiting her grandparents, George and Mary Husak, testified that she woke up at approximately 2:00 a.m. and saw a figure standing in the doorway to her bedroom. Courtney yelled and ran after the person, who ran out of the house. Courtney described the intruder as being at least six feet tall and having a heavier build, but she later testified that she could not give a good description of the intruder because she had just woken up and was wearing contacts that blurred her vision. She testified that after the incident she determined that money was missing from her purse.

Mary Husak testified that she woke up that morning when she heard Courtney's voice. Mary went into the hallway to help Courtney, then called 911. After police arrived at the home, Mary found a partial cigarette lying in her bedroom doorway. Mary testified that the cigarette appeared as though someone had pinched it off so that it could be smoked more later. There was no indication that the cigarette had been smoked while in the house. According to Mary and Courtney, no one in the home smoked, and the cigarette was not there before the incident. Mary later concluded that a $50 bill was missing from her billfold, as well as some $2 bills, bicentennial quarters, and 50 cent pieces.

Officer Darin McIntosh testified that he responded to the home invasion and that Courtney's description of the intruder was very vague, but that she generally described the

suspect as being a male between six feet tall and six feet two inches tall, and having a heavier build. Officer McIntosh collected the partial cigarette from the home, and testified that the house did not smell like smoke and that the cigarette did not look like it had been lit and thrown down on the ground. DNA testing identified defendant's DNA on the partial cigarette.

Sherry Peters, defendant's ex-girlfriend, testified that in July 2014 defendant lived at her home approximately five miles from the location of the home invasion. Peters testified that she and defendant went to bed at 12:30 a.m. on the morning of July 2, 2014. When she woke up later that morning, defendant was present and then left for work. Peters testified that she is a light sleeper and that as far as she knew, defendant did not get out of bed that night. She further testified that although her two dogs bark at any noise, she never heard the dogs bark that night. Peters testified that in her conversations with defendant at the time, he said that he was not involved in the home invasion. She also testified that she regularly smokes on her patio and that she has observed people in her neighborhood pick up discarded cigarette butts "all the time."

Defendant testified that he got up around 3:30 a.m. on July 2, 2014, to finish a painting job before the holiday weekend. Defendant testified that he smokes and that he does not always smoke the entire cigarette. He testified that he did not know how a cigarette with his DNA got into the victim's house, but that he had seen people pick up his discarded cigarette butts. Defendant testified that he had not smoked crack cocaine in two years. Defendant further testified that he was five feet, eight inches tall and weighed around 165 pounds. Defendant stated that when he heard there was a warrant for his arrest for the home invasion he turned himself in to police.

Before trial, the prosecutor filed a motion to admit evidence concerning defendant's two prior home invasion convictions from 2004. The trial court permitted testimony of the prior convictions to be introduced at trial under MRE 404(b) to show motive, identity, scheme, or plan. The testimony described a home invasion in the early in the morning of August 19, 2004. At a home near where defendant lived, the homeowner reported that she woke up while sleeping on the couch and saw a man standing near her television. The homeowner's purse had been hanging near the front door and was spread out on the floor. On the front porch of the house,[1] police discovered a Michigan Identification Card belonging to defendant. Defendant confessed to police that he had entered the home that night to steal items to sell to support his drug habit. Defendant also admitted to breaking into another house that same evening, where he stole a VCR that he traded for a rock of crack cocaine. Defendant pleaded guilty to the two home invasions that occurred in 2004.

At the conclusion of the evidence, the jury in this case returned a verdict finding defendant guilty of the 2014 home invasion. The trial court thereafter sentenced defendant to 15 to 40 years' imprisonment. Defendant now appeals.

---

[1] It is unclear from the record at which house the identification was discovered, as the investigating officer described various houses in the same area where home invasions had occurred at that time.

## II. DISCUSSION

## A. SUFFICIENCY OF THE EVIDENCE

Defendant first contends that the prosecutor failed to present sufficient evidence that defendant committed the home invasion. Specifically, defendant argues that as a matter of law the DNA evidence alone was insufficient to support the conviction. We disagree.

This Court reviews de novo a challenge to the sufficiency of the evidence, *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011), viewing the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Nowak*, 462 Mich 392, 399-400; 614 NW2d 78 (2000). This Court must also "draw all reasonable inferences and make credibility choices in support of the jury verdict." *Id*. at 400.

MCL 750.110a(2) provides, in pertinent part:

(1) As used in this section:

(a) "Dwelling" means a structure or shelter that is used permanently or temporarily as a place of abode, including an appurtenant structure attached to that structure or shelter.

\* \* \*

(2) A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:

(a) The person is armed with a dangerous weapon.

(b) Another person is lawfully present in the dwelling.

In this case, the prosecution established that the intruder entered the dwelling without permission. This was established by Courtney's testimony that she saw a man in the home in the middle of the night and by Mary's testimony that the Husaks had given no one permission to enter the home. The partial cigarette found in the home lends additional support to the allegation that someone other than the Husaks was in the home that night given the testimony of the Husaks that they do not smoke and that the cigarette was not present in the home before the intruder entered the home. The prosecution further established that, while in the dwelling, the intruder committed larceny by taking items from Courtney's and Mary's purses. The prosecution therefore established the elements of first-degree home invasion by establishing that a person

entered the dwelling without permission, committed larceny while in the dwelling, and that another person was present in the home during the home invasion.

Defendant does not dispute that the prosecution established these elements, but instead contends that the evidence does not establish that he was the person who committed the home invasion. In other words, defendant challenges the identity element of the crime. The prosecution is required to prove identity as an element of every offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). In this case, the primary evidence introduced by the prosecution to establish that defendant was the person who entered the home was the presence of defendant's DNA on the partial cigarette found in the home. Witnesses testified that the cigarette was not in the home before the incident and that no other individuals in the home were smokers. It is therefore a reasonable inference for the jury to draw that whoever entered the home illegally that night was the person who left the partial cigarette. The fact that defendant's DNA was present on the partial cigarette tends to prove that the cigarette was in defendant's possession before it was dropped in the home, and therefore supports the conclusion that defendant was in the home.

Circumstantial evidence and reasonable inferences drawn from that evidence may suffice to prove the elements of a crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). In fact, our Supreme Court has held that "circumstantial evidence is oftentimes stronger and more satisfactory than direct evidence." *People v Hardiman*, 466 Mich 417, 429 n 7; 646 NW2d 158 (2002), citing *People v Wolfe*, 440 Mich 508, 526; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992).

In this case, a rational trier of fact could have concluded that the partial cigarette was left in the home by the intruder, and that defendant's DNA on the partial cigarette supports the conclusion that defendant was that intruder. While it is possible that other explanations exist, such as the cigarette being dropped in the home by some other person who had gained access to defendant's partial cigarette, the existence of other possible explanations does not negate that the evidence supports the conclusion of defendant's guilt. The jury rejected the idea that the cigarette was brought into the home by another individual despite defendant's testimony that he had often seen other people pick up his discarded cigarette butts. This Court will not interfere with the jury's role to determine the weight to be given the evidence or the credibility of the witnesses. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). Moreover, although the prosecution is required to prove the elements of the crime beyond a reasonable doubt, the prosecution is not obligated to disprove or negate every theory consistent with innocence. *Nowack*, 462 Mich at 400, citing *People v Konrad*, 449 Mich 263, 273 n 6; 536 NW2d 517 (1995).

Viewing the evidence in the light most favorable to the prosecution, as we are bound to do, and drawing all reasonable inferences in support of the jury verdict, *Norwack*, 462 Mich at 400, we conclude that the identity evidence presented, though circumstantial, was sufficient for a rational trier of fact to conclude that defendant was the person who committed the home invasion in question.

B. EVIDENCE OF PRIOR BAD ACTS

Defendant next argues that evidence of defendant's prior bad acts was improperly admitted at trial under MRE 404(b). We disagree.

We review the trial court's ruling on the admission of evidence for an abuse of discretion. *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011). "[A]n abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome." *People v Babock*, 469 Mich 247, 269; 666 NW2d 231 (2003). When the trial court selects one of these principled outcomes, there is no abuse of discretion and we will defer to the trial court's judgment. *Id*. Preliminary questions of law, including whether a rule of evidence or statute precludes admissibility of the evidence, are reviewed de novo. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

To be admissible, evidence introduced at trial must be relevant, MRE 402, meaning that it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. "Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

The admissibility of other-acts evidence is governed by MRE 404(b)(1) which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Thus, for other-acts evidence to be admissible, (1) the evidence must be offered for a proper purpose, which is any purpose other than to show defendant's character or propensity to commit a crime, (2) the evidence must be relevant under MRE 402 to an issue that is of consequence at trial, and (3) the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). Whether other-acts evidence is more probative than prejudicial is generally left to the determination of the trial court. *People v McGhee*, 268 Mich App 600, 608; 709 NW2d 595 (2005).

Where evidence of prior bad acts is offered to establish identity through a modus operandi theory, logical relevance can be shown where:

(1) there is substantial evidence that the defendant committed the similar act (2) there is some special quality of the act that tends to prove the defendant's identity (3) the evidence is material to the defendant's guilt, and (4) the probative value of the evidence sought to be introduced is not substantially outweighed by the danger of unfair prejudice. [*People v Ho*, 231 Mich App 178, 186; 585 NW2d 357 (1998), citing *People v Golochowicz*, 413 Mich 298, 307-309; 319 NW2d 518 (1982).]

In addition, for other-acts evidence to support an inference that that they were part of a common plan or scheme, our Supreme Court has stated

[E]vidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system. For other acts evidence to be admissible there must be such a concurrence of common features that the uncharged and charged acts are naturally explained as individual manifestations of a general plan. [*People v Hine*, 467 Mich 242, 251; 650 NW2 659 (2002).]

In this case, the prosecutor demonstrated that this other-acts evidence was offered for the proper purpose of establishing defendant's identity as the individual who committed the home invasion and demonstrating defendant's common scheme or plan. The other-acts evidence from 2004 demonstrated that defendant had a pattern of breaking into homes early in the morning to steal things while people were sleeping to support his substance addiction, then fleeing when the occupant of the home woke up. These similarities would allow a jury to infer that defendant had a pattern of behavior to obtain money for his substance addiction. Although it is true that home invasions typically involve breaking and entering to steal items or money, "distinctive and unusual features are not required to establish the existence of a common design or plan." *Hine*, 467 Mich at 252-253.

Additionally, the trial court gave the jury a limiting instruction regarding the use of this other-acts evidence. "[U]pon request, the trial court may provide a limiting instruction to the jury under MRE 105 to specify that the jury may consider the evidence only for proper, noncharacter purposes." *People v Jackson*, 498 Mich 246, 260; 869 NW2d 253 (2015). Here, the trial court twice advised the jury with the following instruction:

Now, you've heard evidence that was introduced to show that the defendant committed crimes for which he is not on trial here today. If you believe this evidence, you must be very careful to consider it for certain purposes. You may only think about whether this evidence tends to show who committed the crime that the Defendant is charged with here today and/or that the Defendant used a plan, scheme, or characteristic scheme that he has used before or since. You must not consider this evidence for any other purpose. For example, you must not decide that it shows that the defendant is a bad person or that he is likely to commit crimes. You must not convict the defendant here because you think he is guilty of other bad conduct. All the evidence must convince you beyond a

reasonable doubt that the defendant committed the alleged crime or you must find him not guilty.

"It is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). We therefore conclude that the jury could appropriately weigh the evidence admitted against the other evidence available, or the lack of other evidence available, and decide how much weight to give it during deliberations. See *Lukity*, 460 Mich at 495. Accordingly, the trial court did not abuse its discretion by admitting the evidence.

## C. SCORING OF OFFENSE VARIABLE 9

Defendant next argues that the trial court's score of 10 points for offense variable (OV) 9 was in error, and defendant is entitled to resentencing. We disagree.

The proper interpretation and application of the sentencing guidelines are questions of law that this Court reviews de novo. *People v Cannon*, 481 Mich 152, 156; 749 NW2d 257 (2008). We review for clear error the trial court's findings of fact at sentencing. *People v Thompson*, 314 Mich App 703, 708; 887 NW2d 650 (2016). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). We will uphold the trial court's scoring decisions if there is any record support for those decisions. *People v Hornsby*, 251 Mich App 462, 468; 650 NW2d 700 (2002).

MCL 777.39 governs the scoring of OV 9 as follows:

> (1) Offense variable 9 is number of victims. Score offense variable 9 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
>
> * * *
>
> (c) There were 2 to 9 victims who were placed in danger of physical injury or death, or 4 to 19 victims who were placed in danger of property loss…………………………………….........................................10 points
>
> (d) There were fewer than 2 victims who were placed in danger of physical injury or death, or fewer than 4 victims who were placed in danger of property loss…………………………………………………………..0 points
>
> (2) All of the following apply to scoring offense variable 9:
>
> (a) Count each person who was placed in danger of physical injury or loss of life or property as a victim. . . .

Under MCL 777.39, for purposes of scoring OV 9 each person who was placed in danger of physical injury or loss of life is considered a victim. *People v Walden*, 319 Mich App 344,

349; 901 NW2d 142, 146 (2017). The plain language of MCL 777.39(2)(a) does not require actual physical contact or injury, but only that a person be placed in danger of injury or death in order to qualify as a victim under OV 9. See *People v Morson*, 471 Mich 248, 262; 685 NW2d 203 (2004). And although MCL 777.39(2) defines a victim, it does not define how or when the danger must arise to be applicable.

Defendant argues that the trial court incorrectly assessed 10 points for OV 9 because the three victims, Courtney and her grandparents, were placed in danger of property loss but not "physical injury or death." The record demonstrates, however, that Courtney and her grandparents were in the home during the home invasion. Courtney testified that she directly encountered the intruder, who was standing in her bedroom door, and chased him through the house. Mary testified that she and her husband were nearby during this encounter as their bedrooms were close to Courtney's. Moreover, Mary responded to Courtney's cries, thereby placing Mary in close proximity to the location where the intruder was fleeing through the house. The conclusion that defendant was in close proximity to the three victims inside the home and therefore posed a danger to its three occupants is thus supported by some evidence on the record, see *Morson*, 471 Mich at 262, and we will therefore uphold the trial court's scoring decision. See *People v Steele*, 283 Mich App 472, 490; 769 NW2d 256 (2009).

Affirmed.

/s/ Michael F. Gadola
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan