*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DAVID ALLEN HILL,

        Defendant-Appellant.

UNPUBLISHED
March 3, 2022

No. 350546
Macomb Circuit Court
LC No. 2018-001795-FC

Before: JANSEN, P.J., and CAMERON and RICK, JJ.

PER CURIAM.

Defendant David Allen Hill appeals his jury-trial convictions of two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a), and two counts of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(d). The trial court sentenced defendant to 57 months to 15 years' imprisonment for the CSC-II convictions and to one to two years' imprisonment for the CSC-IV convictions. We affirm.

## I. BACKGROUND

This case arises from defendant's sexual abuse of his biological daughter. In 2007, defendant and the victim's mother divorced, and defendant was granted primary custody of the victim. At some point, defendant married the victim's stepmother, and they lived in Lapeer County. According to the victim, when she was eight years old, defendant rubbed her "vaginal area" with his hand when they were in his bedroom in Lapeer County. The victim also recalled other incidents in Lapeer County where she moved her "genital area" over defendant's "genital area" at defendant's direction.

In 2009 or 2010, defendant, the victim, and the victim's stepmother moved to Macomb County. According to the victim, when she was nine years old and in the Macomb County home, defendant entered her bedroom, pulled down both of their pants, and "put [his penis] in the [victim's] vaginal area. . . ." According to the victim, defendant "move[d] [his penis] back and

-1-

forth and tried to put it in [her]."[1] After defendant left the room, the victim went to the bathroom and noticed that her vagina was "sticky" and was bleeding. After the victim informed defendant that she was bleeding, defendant instructed the victim "not to say anything or else he would go to jail." The victim was alarmed by this statement because she had a close relationship with defendant and considered him to be her "best friend."

Defendant continued to sexually assault the victim. On one occasion, defendant tried "to put his penis in [her] vagina. . . ." The victim did not know if defendant's penis "went in all the way," but she denied that she bled after this assault. On a different occasion, defendant entered the victim's bedroom, pulled down their pants, and "tried to put [his penis] in [the victim's] butt area." Defendant did not put his penis "in all the way."[2] Defendant also unsuccessfully attempted to pry the victim's mouth open when she was in bed. The victim's eyes were closed during the assault, but she believed that defendant had attempted to put his penis in her mouth.[3] On two different occasions, defendant placed his hand on top of the victim's hand, placed the victim's hand on her vagina, and "move[d her hand] back and forth."[4]

In 2015, the victim moved to Tennessee with defendant, her stepmother, and her half-sister, who was born while they were living in Macomb County. According to the victim, defendant continued to sexually assault her in Tennessee. After the victim completed her freshman year of high school in Tennessee, she spent the summer in Michigan with her mother. The victim reported the assaults to her mother, and her mother contacted law enforcement. The victim did not return to Tennessee.

In 2016, the Lapeer County Prosecutor's Office charged defendant with first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a). In the fall of 2017, defendant's trial in Lapeer County commenced. The victim testified about the alleged sexual assaults that took place in Lapeer County. The victim also testified that defendant had sexually assaulted her in Macomb County and Tennessee. The jury acquitted defendant of CSC-I.

In 2018, the Macomb County Prosecutor's Office charged defendant with one count of CSC-I, two counts of CSC-II, two counts of CSC-IV, and one count of assault with intent to commit sexual penetration, MCL 750.520g(1). Before trial commenced, the trial court ruled that evidence concerning defendant's acquittal in Lapeer County was not admissible. However, the

---

[1] Defendant was charged with first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a), with respect to this alleged assault. The jury was unable to reach a verdict.

[2] Defendant was charged with two counts of CSC-II with respect to these assaults, and he was convicted.

[3] Defendant was charged with assault with intent to commit sexual penetration, MCL 750.520g(1), with respect to this alleged assault. He was acquitted.

[4] Defendant was charged with two counts of CSC-IV with respect to these assaults, and he was convicted.

trial court ruled that the victim's prior testimony in the Lapeer County proceeding could be used for impeachment purposes.

In May 2019, trial commenced in Macomb County and continued over the course of several days. Defendant's defense at trial was that the victim had fabricated the allegations. Defendant was convicted of two counts of CSC-II and two counts of CSC-IV. He was acquitted of assault with intent to commit sexual penetration, and the jury was unable to reach a verdict on the CSC-I charge. The prosecutor subsequently moved to dismiss the CSC-I charge, and the trial court granted the motion.

Defendant was sentenced as outlined above. Thereafter, defendant moved for a new trial, arguing in relevant part that trial counsel was ineffective for failing to use transcripts from the Lapeer County proceeding to impeach the victim. After a *Ginther*[5] hearing was held, the prosecutor conceded that "the only issue [was] prejudice. . . ." The trial court denied defendant's motion for a new trial, concluding that defendant could not establish that the outcome of the proceeding would have been different had trial counsel utilized the transcripts. In so holding, the trial court found that trial counsel was "extremely thorough" and "extremely lengthy in his cross examination" of the victim. This appeal followed.

## II. DOUBLE JEOPARDY

Defendant argues that the charges against him violated the issue-preclusion component of the Double Jeopardy Clause. We disagree.

We review constitutional issues de novo. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." US Const Amend V. See also Const 1963, art 1 § 15. The Double Jeopardy Clause serves "two vitally important interests." *Yeager v United States*, 557 US 110, 117; 129 S Ct 2360; 174 L Ed 2d 78 (2009). The first interest is to protect against multiple prosecutions, and the second interest is to preserve "the finality of judgments." *Id*. at 117-118 (quotation marks and citation omitted).

In *Ashe v Swenson*, 397 US 436, 443; 90 S Ct 1189; 25 L Ed 2d 469 (1970), the United States Supreme Court defined collateral estoppel and concluded that the Double Jeopardy Clause encompasses the concept of issue preclusion. Specifically, the *Ashe* Court held that collateral estoppel "stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id*. When considering what a jury necessarily determined in the first trial, a court must "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other

---

[5] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

than that which the defendant seeks to foreclose from consideration." *Id*. at 444 (quotation marks and citations omitted).

In the Lapeer County proceeding, the prosecutor alleged that defendant had digitally penetrated the victim's vagina with his finger while living in Lapeer County. In this case, the prosecutor alleged various sexual offenses against the victim by defendant after they moved to Macomb County. However, none of these allegations involved digital penetration. Thus, the Lapeer County case involved an allegation that is different from those alleged in this case. While other-acts evidence relating to sexual assaults that occurred in Macomb County was presented to the Lapeer County jury, the jury was only tasked with determining whether defendant had penetrated the victim's vagina with his finger in Lapeer County—not whether defendant had sexually assaulted the victim in Macomb County. Therefore, the issue of whether defendant committed CSC-II and CSC-IV in Macomb County was not determined by the Lapeer County jury. Because an issue of ultimate fact with respect to the Macomb County proceeding was not decided in the Lapeer County proceeding, defendant's Double Jeopardy argument fails.

Defendant also argues that trial counsel was ineffective for failing to raise the Double Jeopardy argument in the trial court. However, because this argument lacks merit for the reasons already discussed, defendant is not entitled to the relief that he seeks. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

### III. EVIDENCE OF PRIOR ACQUITTAL IN LAPEER COUNTY

### A. RIGHT TO PRESENT A DEFENSE

Defendant argues that he was deprived of his right to present a defense as a result of the trial court improperly ruling that evidence of defendant's prior acquittal in Lapeer County was inadmissible. We disagree.

"This Court reviews de novo whether [a] defendant suffered a deprivation of his constitutional right to present a defense." *People v Warner*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 351791); slip op at 9, lv pending (alterations in original; quotation marks and citation omitted). As this Court noted in *People v Parrott*, 335 Mich App 648, 658; 968 NW2d 548 (2021),

> "[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v Kentucky*, 476 US 683, 690; 106 S Ct 2142; 90 L Ed 2d 636 (1986) (quotation marks and citation omitted). Specifically, "[a] criminal defendant must be provided a meaningful opportunity to present evidence in his or her own defense." *People v Bosca*, 310 Mich App 1, 47; 871 NW2d 307 (2015). However, a defendant's right to present a complete defense "is not unlimited and is subject to reasonable restrictions." *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012). A defendant's "right to present a complete defense may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Id*. (quotation marks and citation omitted).

In this case, the prosecutor filed a pretrial motion to exclude evidence of the Lapeer County verdict. The prosecutor argued that the evidence was irrelevant, that it would be more prejudicial than probative, and that it would confuse the jury. In so arguing, the prosecutor agreed that she would not seek to admit other-acts evidence concerning Lapeer County and that the victim's testimony from the Lapeer County proceedings could be used for impeachment purposes. The trial court ruled that the evidence was inadmissible. Defendant argues that this was in error.

All relevant evidence is generally admissible. MRE 402. Relevant evidence is, "evidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the actions more probable or less probable than it would be without the evidence." *People v Mills*, 450 Mich 61, 66; 537 NW2d 909 (1995), modified 450 Mich 1212 (1995). However, relevant evidence is subject to exclusion "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

The trial court did not abuse its discretion by excluding the evidence of defendant's prior acquittal based on its conclusion that the evidence was irrelevant. The fact that a jury acquitted defendant of a different crime is not relevant in this case because it does not tend to make it more or less probable that defendant committed the crimes at issue. As already discussed, defendant was not charged with digitally penetrating the victim in the Macomb County proceeding. Moreover, defendant's prior acquittal does not necessarily establish that he did not digitally penetrate the victim in Lapeer County. Rather, the acquittal establishes that the prosecution failed to meet its burden of proof beyond a reasonable doubt. See *People v Oliphant*, 399 Mich 472, 498 n 14; 250 NW2d 443 (1976).[6] Furthermore, any minimal probative value would be substantially outweighed by the danger of juror confusion. More specifically, evidence of defendant's acquittal could mislead the jury or invite speculation regarding the earlier verdict. See *People v Bolden*, 98 Mich App 452, 461; 296 NW2d 613 (1980). In sum, the trial court did not abuse its discretion.

Moreover, even without the evidence of the prior acquittal, defendant was able to present evidence and argument that the victim fabricated the allegations of abuse. As discussed in more detail below, trial counsel extensively cross-examined the victim, impeached her testimony, and undercut her credibility by highlighting her reporting delays. Defendant also called multiple witnesses to testify that defendant and the victim had a great relationship, that they had never seen defendant engage in inappropriate sexual activities with the victim, and that defendant had a good reputation. Defendant also testified, and he denied that he had sexually assaulted the victim.

---

[6] Defendant relies on *People v Jackson*, 477 Mich 1019; 726 NW2d 727 (2007), to argue that the defense should have been allowed to expose how the victim's changed and "polished" testimony followed the earlier acquittal. But, in *Jackson*, the record demonstrated that the "complainant ha[d] previously been induced by his father to make false allegations of sexual abuse against other persons disliked by the father." *Id*. at 1019. As the prosecutor argues, the allegations against defendant in the Lapeer County trial have not been established to be false. Rather, the jury in Lapeer County merely found defendant not guilty beyond a reasonable doubt. Therefore, this case is distinguishable from the false allegations at issue in *Jackson*.

Consequently, even though the trial court precluded evidence of defendant's prior acquittal, defendant was not deprived of a meaningful opportunity to present a defense.

## B. RIGHT TO CONFRONTATION

Defendant also argues that his right to confrontation was violated by the trial court's decision to preclude evidence concerning his prior acquittal. We disagree.

We review constitutional issues de novo. *Trakhtenberg*, 493 Mich at 47. "A primary interest secured by the Confrontation Clause is the right of cross-examination. The right of cross-examination is not without limit; neither the Confrontation Clause nor due process confers an unlimited right to admit all relevant evidence or cross-examine on any subject." *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993) (citations omitted). "The Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *People v Ho*, 231 Mich App 178, 189; 585 NW2d 357 (1998) (quotation marks and citations omitted). Moreover, trial judges retain wide latitude to impose reasonable limits on cross-examination, and "[t]he right of cross-examination does not include a right to cross-examine on irrelevant issues. . . ." *Adamski*, 198 Mich App at 138.

In this case, defendant argues that his right to confrontation was denied because he was unable to cross-examine the victim about defendant's prior acquittal in the Lapeer County case. However, for the reasons already stated, evidence of defendant's prior acquittal was irrelevant and any minimal probative value would be substantially outweighed by the danger of juror confusion. Furthermore, a defendant does not have the right to cross-examine a witness on irrelevant issues. *Adamski*, 198 Mich App at 138. We therefore find no constitutional error. Moreover, as will be discussed in more detail later in this opinion, defendant was permitted to extensively cross-examine the victim.

Although defendant argues that trial counsel should have responded more vigorously to the prosecutor's motion to exclude evidence of the prior acquittal, any additional advocacy by trial counsel would have been futile. Thus, defendant cannot establish ineffective assistance on this ground. See *Ericksen*, 288 Mich App at 201.

## IV. ASSISTANCE OF COUNSEL

Defendant argues that trial counsel was ineffective for failing to utilize transcripts from the Lapeer County preliminary examination and trial to impeach the victim in the Macomb County proceeding. We disagree that defendant is entitled to relief.

## A. STANDARDS OF REVIEW AND APPLICABLE AUTHORITY

Generally, "[t]he question whether defense counsel performed ineffectively is a mixed question of law and fact. . . ." *Trakhtenberg*, 493 Mich at 47. If the trial court has held a *Ginther* hearing, the trial court must "find the facts, and then . . . decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "[T]his Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *Trakhtenberg*,

493 Mich at 47. Regard should be given to the trial court's opportunity to assess the credibility of the witnesses who appeared before it. MCR 2.613(C); see also *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008), amended 481 Mich 1201 (2008). A finding is clearly erroneous if this Court "is left with a definite and firm conviction that the trial court made a mistake." *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017) (quotation marks and citation omitted).

The Sixth Amendment of the United States Constitution guarantees that criminal defendants receive effective assistance of counsel. *Strickland v Washington*, 466 US 668, 687-688; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To demonstrate ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Abcumby-Blair*, 335 Mich App 210, 228; 966 NW2d 437 (2020) (quotation marks and citations omitted).

> In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy. Yet a court cannot insulate the review of counsel's performance by calling it trial strategy. Initially, a court must determine whether the strategic choices [were] made after less than complete investigation, and any choice is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. [*Trakhtenberg*, 493 Mich at 52 (alteration in original; quotation marks and citations omitted).]

## B. ANALYSIS

In this case, the prosecutor moved to preclude evidence of defendant's acquittal in Lapeer County, but noted that the victim's Lapeer County testimony could be utilized for impeachment purposes. In October 2018, the trial court granted the prosecutor's motion and ordered:

> THE ACQUITTAL IN THE LAPEER COUNTY CASE WILL NOT BE ALLOWED INTO EVIDENCE. ANY TESTIMONY OR OTHER EVIDENCE REGARDING ANY ALLEGATIONS OF SEXUAL ASSAULT BY THE DEFENDANT AGAINST THE COMPLAINANT IN LAPEER COUNTY OR ANY OTHER COUNTY WILL NOT BE ALLOWED INTO EVIDENCE.

Trial counsel testified that he interpreted this ruling to mean that "no part of the proceeding would be allowed during . . . [the Macomb County] trial." As a result, trial counsel believed that he could not utilize any of the transcripts from the Lapeer County proceeding and did not "prepare to use [the victim's] transcript to impeach her from the Lapeer proceeding." However, when trial commenced on May 29, 2019, trial counsel noted that he would be able to use testimony from the

Lapeer County proceeding "to impeach a witness based upon prior testimony. . . ." The trial court agreed that trial counsel's statement was accurate.[7]

Nonetheless, trial counsel did not utilize the Lapeer County transcripts.[8] Trial counsel agreed that this decision was not based on trial strategy. Rather, trial counsel testified that he was "not going to trample on the judge's orders. . . ." However, trial counsel acknowledged that he may have misunderstood the trial court's October 2018 order. Because trial counsel's decision not to use the transcripts to impeach the victim was based on counsel's failure to understand the trial court's ruling, the trial court's conclusion that counsel's decision was not based on sound trial strategy was not erroneous. See *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011) (concluding that trial counsel's failure to pursue admission of phone records into evidence did not constitute sound trial strategy where counsel admitted that he did not pursue admission of the records because "he mistakenly believed no additional steps were required for their admission and became flustered when the prosecution successfully objected to their admittance. . . .").[9]

Nonetheless, we conclude that there is not a reasonable probability that the outcome would have been different if trial counsel had utilized the transcripts. The victim's testimony at the Lapeer County trial concerning the abuse that occurred in Macomb County was largely consistent with her testimony at the Macomb County trial.[10] Thus, the evidence of any minor inconsistencies was not significant. Cf. *id*. at 292. Additionally, the victim did not testify about the Macomb County sexual assaults at the Lapeer County preliminary examination.

Additionally, contrary to defendant's arguments on appeal, trial counsel was prepared to cross-examine the victim. Trial counsel extensively cross-examined the victim, impeached her testimony, highlighted inconsistencies in her Macomb County preliminary examination testimony and her trial testimony, and undercut her credibility by highlighting her reporting delays. Trial counsel also confronted the victim with a written statement, which reflected that the victim did not initially indicate that defendant penetrated her vagina with his penis or that defendant's attempt at penile to vaginal penetration caused her to bleed. Trial counsel elicited testimony concerning the size and layout of the victim's bedroom, which supported that the victim's testimony that defendant had attempted to force his penis into her mouth while she was on the top bunk bed was incredible given the height of the ceilings and the location of a fan. Defendant was acquitted of

---

[7] Because the trial court would have permitted trial counsel to utilize the preliminary examination and trial transcripts to impeach the victim, we need not consider defendant's cursory argument that he was denied "his right of confrontation and cross-examination."

[8] The victim did not testify until June 4, 2019, and trial counsel acknowledged that he had read the Lapeer County transcripts several times before trial and was "[v]ery" familiar with them.

[9] We note that the prosecutor conceded at the end of the *Ginther* hearing that "the only issue [was] prejudice. . . ."

[10] Indeed, defendant indicated in his motion for a new trial that "[t]he complaining witness was the same person in both the Lapeer trial and the Macomb trial. *She testified similarly both times*." (Emphasis added.)

assault with intent to commit sexual penetration, and the jury could not reach a verdict on the CSC-I charge, which resulted in the charge being dismissed.

Thus, because trial counsel effectively cross-examined the victim, there is no indication that "a reasonable probability exists that [an] additional attack on the [victim's] credibility would have tipped the scales in favor of finding a reasonable doubt about defendant's guilt." Cf. *Armstrong*, 490 Mich at 292. Given this record, we conclude that the trial court did not err in ruling that defendant was not deprived of effective assistance of counsel. Cf. *People v Brown*, 491 Mich 914, 914-915; 811 NW2d 500 (2012) (concluding that trial counsel was "ineffective for failing to effectively cross-examine the sole complainant").

## V. IMPROPER CREDIBILITY TESTIMONY

Defendant next argues that he is entitled to a new trial because the prosecutor elicited testimony from the victim's stepmother that vouched for the veracity of the victim's allegations and that the trial court abused its discretion by admitting the evidence. We disagree that defendant is entitled to a new trial.

### A. PRESERVATION AND STANDARDS OF REVIEW

Trial counsel objected to the contested evidence at trial on grounds of relevancy, thereby rendering that argument preserved. See *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). "Preserved evidentiary rulings are reviewed for an abuse of discretion." *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008). However, because trial counsel did not object to the prosecutor's question on the basis of improper bolstering and did not request a curative instruction, the issue is unpreserved and we review for plain error affecting substantial rights. See *id*. at 235. Unpreserved issues are reviewed "for outcome-determinative, plain error." *Id*. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error has affected a defendant's substantial rights when there is "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Moreover, "once a defendant satisfies these three requirements, . . . [r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; second alteration in original). A defendant "bears the burden of persuasion with respect to prejudice." *Id*. at 763.

### B. ANALYSIS

With respect to the prosecutorial error argument, "[a] prosecutor has committed [error] if the prosecutor abandoned his or her responsibility to seek justice and, in doing so, denied the defendant a fair and impartial trial." *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014). "A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence." *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007).

It is a "well-established principle that it is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial." *People v Douglas*, 496 Mich 557, 583; 852 NW2d 587 (2014) (quotation marks and citations omitted). As the finder of fact, the jury determines whether a witness is credible. See *Dobek*, 274 Mich App at 71. Indeed, "it is the province of the jury to determine whether a particular witness spoke the truth or fabricated a cock-and-bull story. . . ." *People v Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013) (quotation marks and citation omitted).

Defendant argues that the prosecutor asked the victim's stepmother why she divorced defendant and that the victim's stepmother testified that she did so due to the victim's allegations. This is an inaccurate characterization of the testimony. The victim's stepmother testified during direct examination that she and defendant divorced in September 2017. The victim's stepmother denied during direct examination that she had ever "see[n] anything sexually inappropriate between" defendant and the victim. The following exchange then occurred between the prosecutor and the victim's stepmother:

> *Q*. Did you ever have any conversations with the defendant about sexually inappropriate things between the defendant and [the victim]?
>
> *A*. Yes.
>
> *Q*. And is that in relationship to the timeframe that you lived in Macomb Township?
>
> *A*. Yes.
>
> *Q*. Where were you when that conversation took place?
>
> *A*. We were in *my apartment* in Knoxville, Tennessee. [Emphasis added.]

The victim's stepmother testified that the conversation took place in January 2017, which was after the victim's stepmother became aware that the victim had made the allegations of sexual assault against defendant. According to the victim's stepmother, defendant acknowledged that the victim had "grind[ed]" "her butt into . . . his groin area" when he was "spooning" with the victim in her bed. Defendant indicated that he remained in bed with the victim "for a little while" because he did not "know what to do." However, defendant acknowledged that his penis became erect during the encounter. Defendant also told the victim's stepmother that the victim began to masturbate when he and the victim were lying on the couch together. According to the victim's stepmother, defendant indicated that "before he realized it, [the victim] had taken his hand and put it down her pants." The victim's stepmother denied that defendant ever told her about these events when they lived in Macomb County.

During cross-examination, the following exchange occurred between trial counsel and the victim's stepmother:

> *Q*. And one of the things . . . that you said which interests me is that you had a conversation with [defendant] in an apartment, and I think you identified it as "my apartment," in January of 2017.

*A.* Correct.

*Q.* Were you not living together in January 2017?

*A.* We were not. After—

*Q.* Just say yes or no.

*A.* No, we were not living together.

*Q.* And you left the marital home?

*A.* Yes.

During redirect examination, the following exchange occurred between the prosecutor and the victim's stepmother:

*Q.* Why was it that you were living separate from the defendant at that time in January 2017?

* * *

*A.* I had moved out with [the victim's half-sister] after [the victim] had disclosed what had happened.

*Q.* And when did you move out?

*A.* It was July of 2016.

Thus, the prosecutor did not directly ask the victim's stepmother to comment on the victim's credibility and did not ask the victim's stepmother to explain why she divorced defendant. Rather, after trial counsel elicited testimony that the victim's stepmother and defendant were not living together in January 2017, the prosecutor asked the victim's stepmother why she moved out of the marital home. However, the prosecutor's question concerning why the victim's stepmother left the marital home resulted in testimony that tended to support that she believed the victim's allegations. Nonetheless, we conclude that defendant is not entitled to relief. Given the evidence in this case, there is no basis to conclude that the victim's stepmother's brief testimony concerning why she moved out of the marital home resulted in the conviction of an actually innocent defendant or that the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. Importantly, the trial court instructed the jury that it alone was to determine the facts and credibility of the witnesses. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Consequently, defendant is not entitled to relief under plain-error review.

Defendant also argues that the trial court improperly admitted the evidence. We agree. As explained above, relevant evidence is, "evidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the actions more probable or less probable than it would be without the evidence." *Mills*, 450 Mich at 66. "Evidence which is not relevant

-11-

is not admissible." MRE 402. In analyzing a relevance issue, a reviewing court must first determine whether the evidence is material, and then whether it has "probative force." *Mills*, 450 Mich at 67. To be material, a fact must be "within the range of litigated matters in controversy." *Id*. at 68 (quotation marks and citation omitted). Testimony has probative force if it tends to make something more or less probable. *Id*. The credibility of a witness is a material fact. *Id*. at 69.

The victim's stepmother's testimony that she moved out of the home after the victim made allegations of sexual assault against defendant tends to go to the credibility of defendant and the victim, so it is clearly material. However, the testimony tended to support that the victim's stepmother found the victim's reports to be credible, and "comments [on an individual's credibility] have no probative value because they do nothing to assist the jury in assessing witness credibility in its fact-finding mission and in determining the ultimate issue of guilt or innocence." *Musser*, 494 Mich at 349 (quotation marks and citation omitted). Indeed, "it is the province of the jury to determine whether a particular witness spoke the truth or fabricated a cock-and-bull story. . . ." *Id*. (quotation marks and citation omitted). Therefore, the trial court abused its discretion when it overruled trial counsel's relevance objection and admitted testimony that was inadmissible as a matter of law.

However, a defendant is not entitled to relief on the ground that evidence was improperly admitted unless the defendant shows "that it is more probable than not that the error was outcome determinative." *People v Lyles*, 501 Mich 107, 117-118; 905 NW2d 199 (2017) (quotation marks and citation omitted). "In making this determination, the reviewing court should focus on the nature of the error in light of the weight and strength of the untainted evidence." *Id*. at 118 (quotation marks and citation omitted).

In this case, the victim testified extensively about the sexual assaults, and the victim's stepmother's testimony about having moved out of the marital home was brief. Additionally, defendant's statements to the victim's stepmother that the victim had initiated sexual contact with him after the victim made the disclosures tends to show consciousness of guilt on the part of defendant. Furthermore, as already stated, the jury was instructed that it alone was to determine the facts and credibility of the witnesses. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *Abraham*, 256 Mich App at 279. Therefore, we fail to see how this brief testimony affected the outcome of the lower court proceeding.

## VI. CUMULATIVE ERROR

Finally, defendant argues that he is entitled to a new trial under the cumulative-error theory. However, because defendant only identified one error, which was harmless, we conclude that he is not entitled to relief. See *People v Ackerman*, 257 Mich App 434, 454; 669 NW2d 818 (2003).

Affirmed.

/s/ Kathleen Jansen
/s/ Thomas C. Cameron
/s/ Michelle M. Rick

-12-